**Robert J. RYDEEN, Plaintiff,**

v.

**Donald J. QUIGG, Commissioner of Patents and Trademarks, Defendant.**

Civ. A. No. 88–1786.

United States District Court, District of Columbia.

Oct. 18, 1990.

Charles E. Bruzga, Cohen, Pontani & Lieberman, New York City, for plaintiff.

Fred E. McKelvey, Office of the Sol., Arlington, Va., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

### I. *Introduction*

Plaintiff Robert J. Rydeen brings this action seeking review of a final decision of the defendant, Commissioner of Patents and Trademarks, refusing to accept late payment of a maintenance fee required to maintain plaintiff's patent in force. Defendant denied plaintiff's request for a waiver, finding that plaintiff's delay in paying the maintenance fee was not "unavoidable." 35 U.S.C. § 41(c)(1). Plaintiff also challenges the Commissioner's "no-timely-notice" interpretation of the statute in which the Commissioner declared that the Patent and Trademark Office ("PTO") has "no duty to notify patentees when their maintenance fees are due." Final Rules for Patent Maintenance Fees, 49 Fed.Reg. 34,722 (1984), *reprinted in* 1046 *Official Gazette* 34 (September 25, 1984). Presently before the Court are the parties' cross motions for summary judgment.

Upon review of the briefs and exhibits submitted by the parties,[1] the administrative record and the relevant law, and for the reasons stated below, we deny plaintiff's cross motion for summary judgment and grant defendant's motion for summary judgment.

### II. *Background*

U.S. Patent No. 4,409,763, covering a particular type of post and beam construction, was issued to plaintiff on October 18, 1983. The patent application was filed on March 23, 1981, and was prosecuted by Attorney Charles E. Bruzga.

In 1980 Congress passed Public Law 96–517, providing that patentees would have to pay maintenance fees to keep their patents

---

**1.** Although plaintiff did not file an opposition to defendant's motion for summary judgment, we accept plaintiff's representation that his cross-motion for summary judgment "inherently opposes" defendant's motion for summary judgment. Plaintiff's Reply to Defendant's Opposition to Cross–Motion for Summary Judgment at 1, n. 1.

in force and that nonpayment would result in expiration. The effective date of that law was December 12, 1980, and it applied to all patent applications filed on or after that date. 35 U.S.C. § 41 (Historical and Revision Notes). Pursuant to 35 U.S.C. § 41(b), the first maintenance fee is due three (3) years and six (6) months after the grant of a patent, and the patent will expire unless payment of the maintenance fee is received in the PTO on or before the date the fee is due or within a six month grace period thereafter (four years from date of issue).[2]

The original patent grant was sent to Attorney Bruzga,[3] who sent it to the inventor, Mr. Rydeen. It contained the following notice regarding maintenance fees on the inside cover:

> If the application for this patent was filed on or after December 12, 1980, maintenance fees are due three years and six months ... after the date of this grant, or within the grace period of six months thereafter upon payment of a surcharge as provided by law. The amount, number and timing of the maintenance fees required may be changed by law or regulation.

According to plaintiff and Bruzga, they did not interpret this notice as a warning that they must set up a calendar system to remind them when the maintenance fees were due. They assumed that the PTO would send timely reminders and that they could rely on those reminders. Plaintiff's Cross–Motion for Summary Judgment ("Plaintiff's Motion") at 5.

**2.** 35 U.S.C. § 41(b) provides, in pertinent part: Unless payment of the applicable maintenance fee is received in the Patent and Trademark Office on or before the date the fee is due or within a grace period of six months thereafter, the patent will expire as of the end of such grace period. The Commissioner may require the payment of a surcharge as a condition of accepting within such six-month grace period the late payment of the applicable maintenance fee.

**3.** A power of attorney was filed with the Patent Office identifying C. Bruzga as the attorney of record. 37 C.F.R. §§ 1.363(a), 1.33(a) and 1.34(b).

On August 31, 1984, following a period for notice and comment, the Patent Office published "Final Rules for Patent Maintenance Fees," 49 Fed.Reg. 34716 (1984). The notice indicated that "[u]nder the statutes, the Patent and Trademark Office has no duty to notify patentees when their maintenance fees are due." This is the PTO's "no-timely-notice" interpretation of the maintenance fee statutes, 35 U.S.C. §§ 41(b) and 41(c), of which plaintiff complains. The notice in the *Federal Register* also alerted patent holders that:

> [t]he Patent and Trademark Office will, however, provide some notices as reminders that maintenance fees are due but the notices, errors in the notices, or the lack of notices, will in no way relieve a patentee from the responsibility to make timely payment of each maintenance fee to prevent the patent from expiring by operation of law. The notices provided by the Patent and Trademark Office will be merely courtesy in nature and intended to aid patentees. These notices, errors in these notices or lack of notices, will in no way shift the burden of monitoring the time for paying maintenance fees on patents from the patentee to the Patent and Trademark Office.

49 Fed.Reg. 34723 (August 31, 1984). The first maintenance fee payment for the patent at issue in this action became due on April 18, 1987 and was payable within a six month grace period expiring on October 19, 1987. For a number of reasons that plaintiff discusses at length, Attorney Bruzga did not receive a reminder notice until October 19th, the last day of the six month grace period, and did not act upon that notice until the next day.[4]

**4.** At the time Bruzga prosecuted the patent application for plaintiff he lived in Schenectady, New York. In 1985, Bruzga relocated to New York City, filing a change of address form with the United States Postal Service in Schenectady and notifying the Office of Enrollment and Discipline of the PTO. Neither plaintiff nor Bruzga changed the correspondence address of record in the individual patent file in accordance with 37 C.F.R. § 1.363.

On May 24, 1987, the PTO sent a "Maintenance Fee Reminder" notice to Bruzga at his former Schenectady address. The notice was returned to the PTO because the time for forwarding mail to Bruzga's new address had ex-

Under 35 U.S.C. § 41(c)(1), the Commissioner may accept late payment of a maintenance fee if the delay is shown to the satisfaction of the Commissioner to have been "unavoidable." 35 U.S.C. § 41(c)(1). Plaintiff petitioned the PTO to accept his late filed fee and to reinstate his patent. On December 16, 1987, defendant denied plaintiff's petition on the ground that failure to receive timely notice from the PTO cannot serve as the basis of "unavoidable delay." Defendant heard plaintiff's request for reconsideration, but in a decision dated June 1, 1988, 7 U.S.P.Q.2d 1798, did not alter its initial determination.[5] In denying plaintiff's request for reconsideration the PTO held that: 1) mailing of the fee reminder notices is merely a courtesy; 2) under the statutes and regulations the PTO has no duty to inform patentees when their maintenance fees are due; 3) the lack of a reminder notice will not shift the burden of monitoring the time for paying a maintenance fee from the patentee to the PTO; and 4) plaintiff did not sustain his burden of proving "unavoidable delay" pursuant to 35 U.S.C. § 41(c)(1).

Plaintiff brings this civil action seeking judicial review of the Commissioner's "no-timely-notice" that the PTO has no statutory duty to provide patent owners with notice when their patent maintenance fees are due, and reversal of the PTO's adjudicatory decision based on that interpretation.

### III. *Discussion*

#### A. Action under the Administrative Procedure Act

One of the grounds upon which plaintiff challenges the Commissioner's no-timely-notice interpretation and adjudicatory decision is the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* Plaintiff argues that this Court should find under its reviewing authority of 5 U.S.C. §§ 706(2)(A) and (C) that the Commissioner went beyond the scope of his authority in interpreting the statute, that his interpretation was incorrect, and that, consequently, the Commissioner incorrectly denied plaintiff's petition to accept late maintenance fee payments. For the reasons set forth below, this Court finds that the Commissioner's actions were valid under the standards of the Administrative Procedure Act.

#### 1. *Record on Review*

As a preliminary matter, plaintiff argues that he should be able to augment the record and have the Court consider affidavits of Mr. Rydeen and Mr. Bruzga that were not before the Commissioner in the agency proceedings below. In regard to plaintiff's APA claims,[6] plaintiff's only argument for admitting the additional affidavits is that 5 U.S.C. § 706(2)(F) authorizes *de novo* review. The Court first points out that none of plaintiff's substantive arguments rest on § 706(2)(F). Moreover, the Supreme Court has made it clear that such *de novo* review is limited to two specific circumstances: (1) when the action

---

pired. After a delay of some four months, the PTO apparently retrieved Bruzga's address from the Office of Enrollment and Discipline and re-mailed the notice to Bruzga's current law firm address. However, the notice was addressed to "Chas. E. Grizza." The notice reached Bruzga's law firm at the earliest on October 12, 1987, one week before the critical last day for payment, October 19, 1987.

As was the office routine, the notice was routed to a Maintenance Fee Clerk at the law firm, who generally reviewed such reminders once a week. On October 19, 1987, the clerk reviewed the notice. The misaddressed notice nevertheless was received by Bruzga in the afternoon of October 19th, the last day of the six month grace period for late payment of the maintenance fee. Under applicable PTO regulations Bruzga could have timely filed the maintenance fee by depos-

iting the fee and any additional surcharge with the Postal Service prior to midnight on October 19, 1987.

Bruzga did not take any immediate action that day upon receipt of the notice, explaining that he was engaged in rush work for a client of the firm and his previous experience with correspondence from the Patent Office always provided a month or longer for response. Plaintiff's Motion at 9.

5. For simplicity, we will refer to the PTO's initial decision and reconsideration as the "adjudications" or "adjudicatory decisions."

6. Most of plaintiff's arguments for admitting these affidavits are based on plaintiff's constitutional claims, which this Court will address separately in section B below.

is adjudicatory in nature and the agency's fact finding procedures are inadequate, and (2) when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). This case falls into neither of those categories.

The APA provides that in reviewing the validity of agency action, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706(2). Such review is generally limited to the administrative record presented by the agency to the reviewing court. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44, 105 S.Ct. 1598, 1606–07, 84 L.Ed.2d 643 (1985); *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Overton Park*, 401 U.S. at 420, 91 S.Ct. at 825. Thus, in regard to plaintiff's APA claims, the Court refuses to consider the new affidavits that were not before the Commissioner during the administrative adjudications in plaintiff's case.

### 2. *Standard of Review*

■ The APA provides that agency action may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C). It is well established that "the scope of review under the 'arbitrary and capricious standard' is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). Similarly, reviewing an agency's interpretation of statutes and regulations to make sure they are not "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," also involves deference to the administrative determinations, unless they are plainly erroneous or inconsistent with the relevant statutes. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Gulf Oil Corporation v. Hickel*, 435 F.2d 440, 444–

45 (D.C.Cir.1970); *National Retired Teachers Ass'n v. U.S. Postal Service*, 430 F.Supp. 141, 145 n. 20 (D.C.1977).

■ Plaintiff argues that the Commissioner's no-timely-notice rule does not deserve deference from this Court because it is merely an "interpretation" rather than an official rulemaking. In the specialized field of patent law, however, the Commissioner of Patent and Trademarks is primarily responsible for the application and enforcement of the various narrow and technical statutory and regulatory provisions. His interpretation of these provisions is entitled to considerable deference. *Morganroth v. Quigg*, 885 F.2d 843, 848 (Fed. Cir.1989); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1425 (Fed.Cir.1988) ("an agency's interpretation of a statute it administers is entitled to deference"); *see also Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute").

### 3. *Application of Standards to Record*

■ In the context of these standards plaintiff has failed to demonstrate that he is entitled to the relief sought. In 35 U.S.C. § 41(c)(1) Congress delegated authority to the Patent and Trademark Commissioner to accept maintenance fees after the six month grace period if delay is shown "to the satisfaction of the Commissioner" to be "unavoidable." Of course, the Commissioner may not exercise such discretion in a way that contradicts the purposes of the statute or is completely contrary to reason. *See Commissariat a L'Energie Atomique v. Watson*, 274 F.2d 594, 596–97 (D.C.Cir.1960) ("[W]here valuable rights are at stake, the Commissioner's discretion cannot remain wholly uncontrolled, if the facts clearly demonstrate that the applicant's delay in prosecuting the application was unavoidable, and that the Commissioner's adverse determination lacked any basis in reason or common

sense.") Here, however, the Commissioner's "no-timely-notice" interpretation and definition of "unavoidable" were permissible constructions of the relevant statutes.

First, plaintiff argues that the Commissioner's interpretation of "unavoidable" contradicts 35 U.S.C. § 41(c)(1) because the PTO had always interpreted other "unavoidable delay" provisions—namely 35 U.S.C. §§ 133 and 151—as being conditioned on timely mailed notice. Consequently, plaintiff argues, Congress passed § 41(c)(1) on the presumption that the Commissioner would find late maintenance fee payments to be "unavoidable" whenever patentees did not receive timely mailed notice. Defendant's reply is that Congress expressly conditioned §§ 133 and 151 on a specific type of notice,[7] while no such notice requirements are written into § 41(c). Defendant then lists other provisions in which Congress has given specific notice requirements whenever it felt it was necessary, and argues that Congress envisioned no such notice requirements for § 41(c). Bolstering defendant's argument is *Smith v. Mossinghoff,* which concludes that the unavoidable delay standard is broader, and "must be decided on a case-by-case basis, taking all of the facts and circumstances into account." 671 F.2d 533, 538 (D.C.Cir. 1982).

Plaintiff attempts to rely on the legislative history to show that Congress meant the Commissioner to find delay to be unavoidable whenever a patentee did not receive a reminder notice in the mail. Plaintiff's arguments, however, are unpersuasive. Senator Bayh's "addition to the legislative history" does not rise to the level of authoritative statutory language in contradiction to the Commissioner's interpretation. After all, Congress did not amend the statute to include the type of mailed notice requirement that Senator Bayh suggests. *See* 126 Cong.Rec. 30364–66 (1980).

The Commissioner's interpretation of "unavoidable" and of the PTO's duty to provide reminder notices then, do not plainly contradict the statute. For this reason, we must accord deference to the Commissioner's no-timely-notice interpretation and adjudication in plaintiff's case.

Finally, plaintiff's few references to other patent cases in which the Commissioner accepted late maintenance fee payments are distinguishable and fail to establish that the Commissioner's decision in plaintiff's case was capricious, arbitrary, an abuse of discretion, or otherwise contrary to law.

**B. Constitutional Challenges to Commissioner's Actions**

■ Having denied plaintiff relief under the Administrative Procedure Act, we must now address plaintiff's constitutional claims. Independent of any power of review that Congress granted to this Court under the APA, this Court has the authority to examine and rule on any actions of a federal agency that allegedly violate the Constitution.[8]. *See Porter v. Califano,* 592 F.2d 770, 780 (5th Cir.1979). Here, plaintiff makes three separate constitutional arguments: (1) that the Commissioner deprived him of property without due process of law, (2) that the Commissioner denied him equal protection of the law, and (3) that the Commissioner violated the principle of separation-of-powers. For the reasons set forth below, we find that the Commissioner's actions did not violate the Constitution.

---

**7.** In pertinent part, § 133 states: "Upon failure of the applicant to prosecute the application within six months after any action therein, *of which notice has been given or mailed to the applicant* ... the application shall be regarded as abandoned ... unless it be shown to the satisfaction of the Commissioner that such delay was unavoidable." Even more direct is § 151, which makes the due date for the remaining balance of the issue fee three months from the sending of a notice.

**8.** Although plaintiff poses his constitutional challenges directly, the Administrative Procedure Act also provides for Courts to make an independent assessment of constitutional issues. 5 U.S.C. § 706(2)(B). The role of the Court is the same, however, whether plaintiff sues directly under the Constitution or under § 706(2)(B). *See Porter v. Califano,* 592 F.2d 770, 781 (5th Cir.1979).

### 1. Record on Review and Standard of Review

 When reviewing constitutional challenges to agency decisionmaking, courts make an independent assessment of the facts and the law. *Pickering v. Bd. of Educ. of Township High School Dist. 205, Will County*, 391 U.S. 563, 578–79 n. 2, 88 S.Ct. 1731, 1739–40 n. 2, 20 L.Ed.2d 811 (1968). Thus, we may consider the additional affidavits of Mr. Rydeen and Mr. Bruzga even though they were not before the agency upon administrative review. Furthermore, we need not accord deference to the agency's decisions in regard to plaintiff's constitutional challenges because the courts, not agencies, are experts on constitutional issues. *Porter v. Califano*, 592 F.2d 770, 780 n. 15 (1979). We turn now to plaintiff's specific challenges.

### 2. Due Process

 Plaintiff argues that the expiration of his patent constitutes a deprivation of property without due process of law. Specifically, he argues that the notice he received was inadequate because he should have received mailed notice a reasonable amount of time prior to the expiration date of his patent informing him that his maintenance fee was due. As authority, plaintiff relies on *Mullane v. Central Hanover Bank & Trust Co.*, in which the Supreme Court required that "[w]here the names and post-office addresses of those affected by a *proceeding* are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." 339 U.S. 306, 318, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950) (emphasis added).

 Plaintiff's reliance on *Mullane* is misplaced. Plaintiff is not challenging the notice he received informing him of the pendency of proceedings. Rather, he argues that he received insufficient notice of the effect of the patent statute—namely, that his patent would expire unless he paid his maintenance fee within three years and six months of the patent grant. 35 U.S.C. § 41(c)(1). As a constitutional matter, however, plaintiff was not entitled to any notice beyond publication of the statute. *Texaco v. Short*, 454 U.S. 516, 536, 102 S.Ct. 781, 796, 70 L.Ed.2d 738 (1982) ("[I]t has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights."). Thus, all of plaintiff's arguments about the defects in the additional notice he received from the PTO—the last minute reminder notice to Mr. Bruzga, the unclear notice on the patent cover, and the invalidity of constructive notice through the Code of Federal Regulations, the Federal Register, and the Official Gazette—are irrelevant. Moreover, even if this Court were convinced that the alleged defects in the PTO's additional notice procedures mislead plaintiff and caused him and his attorney to misconstrue the maintenance fee statute,[9] this Court could not properly assert equitable estoppel in this case because the defendant committed no affirmative misconduct. *See Schweiker v. Hansen*, 450 U.S. 785, 788–789, 101 S.Ct. 1468, 1470–1471, 67 L.Ed.2d 685 (1981); *see also Goldberg v. Weinberger*, 546 F.2d 477, 481 (2d Cir.1976) (emphasizing the need to prevent the frustration of federal statutes).

Plaintiff's reliance on *North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283, 45

---

**9.** A more accurate characterization of this case is that plaintiff's attorney, Mr. Bruzga, neglected his duties and then tried to place the blame on the PTO. Mr. Bruzga argues that he had no duty to make sure plaintiff's patent remained in force because he was not hired for that purpose. Even if that is true, Mr. Bruzga still should have explained to Mr. Rydeen that the patent would expire if he did not pay maintenance fees by the date set forth in the statute, 35 U.S.C. § 41(b), and that he, Mr. Bruzga, would not keep track of those due dates for him. Mr. Bruzga cannot blame the PTO for giving him insufficient notice of the rules because, as a registered patent attorney, Mr. Bruzga is expected to keep apprised of changes in PTO rules. If the rules were unclear as of the time Mr. Bruzga last represented Mr. Rydeen, then Mr. Bruzga had the duty to inform his client of the risks of proceeding without legal representation. *See* Model Code of Professional Responsibility DR 2–110(A)(2) ("In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client....")

S.Ct. 491, 494, 69 L.Ed. 953 (1925) is also misplaced because plaintiff did not distinguish between proceedings and legislative enactments. *North Laramie* specifically affirmed the rule that "[a]ll persons are charged with knowledge of the provisions of statutes and must take note of the procedure adopted by them." 268 U.S. at 283, 45 S.Ct. at 494. Plaintiff's confusion is that the Court went on to discuss a reasonableness inquiry of notice. That inquiry, however, was limited to whether "the period of notice of the initiation of *proceedings* and the method of giving it are reasonably adapted to the nature of the *proceedings* and their subject matter and afford to the property owner reasonable opportunity *at some stage of the proceedings* to protect his property from an arbitrary or unjust appropriation." *Id.* Here plaintiff had the opportunity to contest the appropriation of his property at the Commissioner's adjudication of his case, and plaintiff raises no objection to the notice he received prior to those proceedings. Plaintiff did not have a right to personalized notice that his patent would expire if he did not pay his maintenance fee because the notice he received through the publication of 35 U.S.C. § 41(c) was constitutionally sufficient.

### 3. *Equal Protection*

▆▆▆ Plaintiff claims that the Commissioner denied him equal protection of the law in violation of the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Specifically, he argues that the PTO's delay in sending him a reminder notice and the PTO's misaddressing of that notice lacks a rational relation to a legitimate purpose.

It is well established, however, that plaintiff bears a heavy burden in proving that government action fails the "rational basis" test. *See, e.g., Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 314–17, 96 S.Ct. 2562, 2567–69, 49 L.Ed.2d 520. The Commissioner announced in the Final Rules for Patent Maintenance Fees that the PTO will "pro-

vide some notices as reminders that maintenance fees are due, but the notices, errors in the notices, or the lack of notices, will in no way relieve a patentee from the responsibility to make timely payment of each maintenance fee to prevent the patent from expiring by the operation of law." 49 *Fed. Reg.* at 34723. Many legitimate purposes exist for making patentees, rather than the PTO, bear the ultimate responsibility for keeping track of maintenance fee due dates.[10] Thus, the Commissioner and the PTO did not deny plaintiff equal protection of the law.

### 4. *Separation of Powers*

▆▆▆ Finally, plaintiff alleges that the Commissioner violated the separation-of-powers doctrine when he decided that the PTO has no duty to provide mailed reminder notices. He argues that Congress did not authorize the Commissioner to make that decision, and furthermore, that such a decision should only be decided by Congress.

In making such an argument plaintiff contradicts himself. Plaintiff has stated that the Commissioner has general power under 35 U.S.C. § 6(a) to make decisions about what kind of notice patentees should receive, and that Congress' silence on the issue of notice is not proof that no notice is required because Congress cannot be expected to "hold the hand" of the Commissioner on every decision. Plaintiff's Motion at 15. On the other hand, plaintiff seems to be arguing that the Commissioner does not have the authority to assume such a "major policy decision." The only way in which plaintiff's arguments make any sense at all is if he is arguing that Congress has created a presumption that the PTO will provide mailed notice to patentees which Congress need not spell out in every provision because the Commissioner has authority to apply it to all cases, but that the Commissioner does not have the authority to defeat that presumption.

---

**10.** One legitimate purpose, for example, is to further the sound and efficient administration of the PTO by eliminating the duty to perform unnecessary tasks. *Cf. U.S. v. Fausto*, 484 U.S.

439, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988) (upholding a statute that Congress enacted in response to the needs of "sound and efficient administration.")

Plaintiff's separation-of-powers claims are unpersuasive. First, Congress has not created a presumption that the PTO will provide mailed notice to patentees.[11] Second, the Commissioner does have general authority to interpret the maintenance fee statutes, and that includes the power to decide whether the PTO will provide any additional notice to patentees, beyond the publication of the statute, of when those fees are due. 35 U.S.C. § 6(a). Thus, the Commissioner was authorized to decide that the PTO will have no duty to provide extra notice. Finally, the authority that plaintiff cites does not support the conclusion that maintenance fee notices are such a "major policy question" as to be beyond congressional delegation to an administrative agency. *See Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 398, 60 S.Ct. 907, 915, 84 L.Ed. 1263 (1940) ("Delegation by Congress has long been recognized as necessary in order that the exertion of legislative power does not become a futility.")

### IV. *Conclusion*

Upon consideration of defendant's motion for summary judgment, plaintiff's cross motion for summary judgment, the oppositions thereto and the entire record herein, we find that the Commissioner's determination that plaintiff failed to meet the "unavoidable delay" standard justifying acceptance of a late maintenance fee was not arbitrary, capricious or an abuse of discretion, nor was it in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. Furthermore, we find that the PTO's actions neither violated the separation of powers, nor denied plaintiff equal protection or due process of law. We therefore deny plaintiff's cross motion for summary judgment and grant defendant's motion for summary judgment.

An Order consistent with the above has been filed this date.

### ORDER

Upon consideration of defendant's motion for summary judgment, plaintiff's cross motion for summary judgment, de-

fendant's opposition, and plaintiff's reply, and for the reasons set forth in the accompanying memorandum opinion, it is by the Court this 17th day of October, 1990,

ORDERED that defendant's motion for summary judgment is granted, and it is

ORDERED that plaintiff's cross motion for summary judgment is denied, and it is

FURTHER ORDERED that plaintiff's cause of action is dismissed with prejudice.

---

**11.** See discussion above in Section III.A.3.