**CULLMAN REGIONAL MEDICAL CENTER, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of the Department of Health and Human Services, Defendant.**

**Civil Action No. 94–0945.**

United States District Court, District of Columbia.

Nov. 8, 1996.

Bryon J. Gross, John R. Hellow, Hooper, Lundy & Bookman, Inc., Los Angeles, CA, W. David Allen, Eaton, McClellan & Allen, Washington, DC, for Plaintiff.

Kimberly N. Tarver, Harriet S. Rabb, Darrel J. Grinstead, Henry R. Goldberg, U.S. Attorney's Office, Washington, DC, Lawrence J. Harder, M. Susan Wiley, Dean S. Landis, Health Care Financing Division, Office of the General Counsel, U.S. Department of Health and Human Services, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

KESSLER, District Judge.

### I. Introduction

This action for declaratory and injunctive relief is brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et. seq. Plaintiff Cullman Regional Medical Center ("Cullman") is a hospital located in Cullman, Alabama that provides Medicare Services. Defendant Donna E. Shalala, Secretary of the Department of Health and Human Services (the "Secretary"), administers the Medicare program. Plaintiff seeks judicial review of the Secretary's denial of its application for geographic reclassification under the Medicare reimbursement regulations. In reviewing Cullman's request, the Secretary used data from the 1988 Health Care Financing Administration ("HCFA") wage survey, as required by the regulations governing reclassification. 42 C.F.R. § 412.230(e)(2). The data submitted by Cullman at the time the Secretary's decision was made did not meet the guidelines for reclassification. Cullman argues that the Secretary's decision must be overturned because the wage data correction policies relating to geographic reclassification are arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law, and therefore in violation of the Administrative Procedure Act, 5 U.S.C. § 701 et seq.

These issues are now before the Court on the parties' cross motions for summary judgment. Upon consideration of the Motions, Oppositions, Replies, the Administrative Record, relevant case law, and the entire record herein, the Court concludes that Plaintiff's Motion for Summary Judgment must be denied and Defendant's Motion for Summary Judgment must be **granted.**

### II. Statutory Framework

The Medicare program, established by the Medicare Act, provides health care for eligible aged and disabled persons. 42 U.S.C. § 1395 et seq. Under the Medicare system, hospitals are reimbursed for their services through public or private fiscal intermediaries. 42 U.S.C. § 1395h. Hospitals' claims for inpatient services are paid according to Medicare's Prospective Payment System ("PPS").

Through PPS, hospitals are reimbursed a fixed amount for each patient discharged from one of various Diagnosis Related Groups ("DRGs"). 42 U.S.C. § 1395d. For each hospital, the rate of payment per DRG is based upon the hospital's "standardized amount" adjusted by its "wage index." 42 U.S.C. § 1395ww(d)(2)(H), (3)(E). The standardized amount is the portion of the hospital's costs that can be attributed to wages and wage related costs. 42 U.S.C. § 1395ww(d)(2)(C), (D). The wage index for a hospital is a comparison of the average hospital wage for the geographic area in which the hospital is located and the national average hospital wage. 42 U.S.C. § 1395ww(d)(3)(E). During the period at issue in this case, each provider hospital was designated as part of a rural, urban, or large urban area. That geographic classification was then used to compute the wage index, which was used to calculate the standardized amounts applicable to each area. 42 U.S.C. § 1395ww(d)(2)(D). Geographic classification, therefore, has a direct and significant effect upon the amount of Medicare reimbursement a hospital receives.

Prior to 1987, many rural hospitals located near urban areas complained that they actually incurred higher costs, and were thus insufficiently reimbursed for providing services, than their geographic classification reflected. In 1987, Congress modified the Medicare program to allow hospitals to seek geographic reclassification. 42 U.S.C. § 1395ww(d)(8)(B). Congress made further

modifications to the geographic reclassification process in 1989 when it established the Medicare Geographic Classification Review Board ("MGCRB") of the Department of Health and Human Services ("HHS") to consider and issue decisions on applications for geographic reclassification. 42 U.S.C. § 1395ww(d)(10). In those instances where a rural hospital believes that it is insufficiently reimbursed for the cost of providing services, it may apply for a geographic reclassification, which may in turn increase its reimbursement. 42 U.S.C. § 1395ww(d)(8)(B). A hospital may request reclassification for the purpose of altering its average standardized amount and/or area wage index. 42 U.S.C. § 1395ww(d)(10)(C)(i).

To apply for reclassification, a hospital must submit a timely reclassification request to the MGCRB and must provide data comparing its average hourly wage to the average hourly wage of the area to which it seeks to be assigned. According to the Secretary's guidelines, such hospital wage data must be taken from the current version of the HCFA wage survey. 42 C.F.R. § 412.230(e)(2). Applications for reclassification for a given federal fiscal year must be submitted on or before the start of the first day of the preceding federal fiscal year. The MGCRB must review the application and issue its decision within 180 days of that deadline. 42 U.S.C. § 1395ww(d)(10)(C)(iii)(I). A hospital will qualify for reclassification if it can establish that its labor costs are sufficiently similar to those of urban hospitals in nearby Metropolitan Statistical Areas ("MSAs"). 42 U.S.C. § 1395ww(d)(8)(B). Within 15 days of the MGCRB's decision, the hospital may appeal to the Secretary through the HCFA Administrator. The HCFA Administrator must issue a decision within 90 days of the appeal. 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II). The HCFA Administrator's decision is final and not subject to judicial review. *Id.*

As noted above, the MGCRB uses wage data processed by HCFA in making its geographic reclassification decisions. When the PPS system was first implemented, the Secretary realized that there might be times when the official HCFA wage index data for a given hospital would be incorrect. Therefore, in September 1983, the Secretary promulgated an interim final rule on PPS implementation which set forth the procedure for correction of such data. In such a situation, the fiscal intermediaries, such as Blue Cross & Blue Shield, who had been working with wage data since 1979 and had been collecting wage data since 1984, *see* 49 Fed.Reg. 27,483 (July 3, 1984), would recalculate the payment rates. 48 Fed.Reg. 39,765 (Sept. 1, 1983). On January 3, 1984, the Secretary finalized this rule and stated that wage data corrections would be made prospectively only. 49 Fed.Reg. 34, 258 (Jan. 3, 1984).[1]

Under the rules in effect at the time of Cullman's reclassification request, a hospital seeking to modify wage survey data was required to submit proposed corrections to its fiscal intermediary. The intermediary reviewed the proposed corrections and, if it agreed that the corrections should be made, forwarded the new data to HCFA's Office of Payment Policy ("OPP") with a recommendation that the wage survey at issue be amended. 57 Fed.Reg. 23618, 23631 (June 4, 1992). OPP then processed the proposed amendments and determined whether to incorporate them into its comprehensive wage survey.

The MGCRB's geographic reclassification decisions can only be based on OPP approved wage information. 42 C.F.R. § 412.230(e)(2). The Secretary has recognized that when requests for wage index corrections, processed by OPP, and requests for geographic reclassification, processed by MGCRB, are submitted simultaneously, some decisions adverse to the hospitals have occurred because of the separateness of the two HHS entities. 56 Fed.Reg. 25,477 (June 4, 1992); 57 Fed.Reg. 23,630 (June 7, 1992) ("[B]ecause wage data corrections are processed throughout the year, the outcome of a hospital's reclassification request may in some cases depend entirely on whether the intermediary's audit

---

1. At this time, the Bureau of Labor Statistics, rather than HHS, was the entity responsible for the collection and approval of wage data. The Secretary's regulations on correction procedures also applied to HCFA after it began collecting the wage survey data.

and [OPP's] subsequent processing of its wage correction are complete before the MGCRB issues its decision."). However, the Secretary found that a policy allowing for midyear updates was better than that requiring the MGCRB to use the wage data in effect at the time the reclassification application was filed. Such a policy allows hospitals to benefit from wage data corrections processed while an application for reclassification is pending. *Id.*

The Secretary also promulgated rules establishing the acceptable sources of data to be included in the wage survey. 55 Fed.Reg. 36,760 (Sept. 6, 1990) (interim final rule); 56 Fed.Reg. 25,477 (June 4, 1991) (final rule). At the time of the 1988 HCFA wage survey, at issue in this case, the Secretary excluded data for management services employees hired on a contract basis. However, due to concerns that this policy disadvantaged rural hospitals that are often forced to hire management labor on a contract basis, the Secretary later modified the policy to allow consideration of some management contract wage data. 59 Fed.Reg. 45330, 45355 (September 1, 1994).

### III. *Procedural History*

On September 25, 1991, Plaintiff Cullman submitted an application for geographic reclassification to the MGCRB for federal fiscal year 1993. A.R. 52–109.[2] Cullman requested reclassification from rural Alabama to: (1) the Decatur, Alabama MSA for wage index purposes, (2) the Birmingham, Alabama MSA for wage index purposes, and/or (3) the Decatur, Alabama MSA for standardized amount purposes. A.R. 53.

With its application for reclassification, Cullman submitted wage data that did not coincide with data in the then-current 1988 HCFA wage survey. In a letter to the MGCRB dated March 10, 1992, Cullman's representative, Coopers & Lybrand, explained the discrepancy by citing various wage data omissions in the 1988 HCFA wage survey. A.R. 39–45. Despite the fact that Cullman had submitted its reclassification application almost six months earlier, Cullman had still not sought official correction of

its wage survey data from OPP through its fiscal intermediary, Blue Cross and Blue Shield of Alabama ("Blue Cross"). Plaintiff's Response to Defendant's First Set of Interrogatories at 4.

On April 2, 1992, the MGCRB issued a decision granting Cullman reclassification to the Decatur, Alabama MSA for wage index purposes. Excluding the additional data submitted by Coopers & Lybrand, because it had not been approved by OPP, and relying solely upon the data contained in the 1988 HCFA wage survey, the MGCRB denied reclassification to the Birmingham, Alabama MSA for wage index purposes and to the Decatur, Alabama MSA for standardized amount purposes. A.R. 20–29.

On April 14, 1992, Cullman appealed the MGCRB's decision denying the reclassification request to the Birmingham, Alabama MSA for wage index purposes. Cullman argued that particular items needed to be corrected in the 1988 HCFA wage survey and that if these corrections were incorporated into the survey, Cullman would be entitled to reclassification. In particular, Cullman pointed to wage data for its Administrator and its Director of Nursing. Cullman further stated that it was "working with" Blue Cross to make the necessary corrections, i.e., to obtain the necessary approvals from OPP. A.R. 13–19.

In order to support its proposed data corrections, Cullman performed an audit of its wage data. On May 22, 1992, Cullman informed Blue Cross that the audit was complete and requested a meeting to discuss the proposed amendments. That meeting occurred on June 9, 1992, and in a letter to OPP dated June 11, 1992, Blue Cross forwarded Cullman's requested modifications, recommending that they be incorporated into the 1988 HCFA wage survey. A.R. 11–12. At several places in the documentation supporting the proposed amendments, Cullman indicated that one of the items that it sought to have included in its wage data was the cost of salaries for its administrator and director of nursing. However, Cullman failed to indicate that those administrators were not sala-

---

**2.** "A.R." denotes the certified Administrative    Record filed by Defendant.

ried employees but were hired under management contracts. A.R. 13, 16; Letter of June 11, 1992 from Hosea Hampton to John Davis, Exh. 2 to Defendant's Motion for Summary Judgment.

On June 18, 1992, the HCFA Administrator affirmed the MGCRB's decision denying Cullman's reclassification to the Birmingham, Alabama MSA for wage index purposes. The HCFA Administrator did not consider Cullman's data corrections, as the 1988 wage survey had not yet been formally amended. A.R. 6–7.

On July 22, 1992, OPP took final action formally approving Cullman's wage data corrections and incorporating them into the 1988 HCFA wage survey. That amendment took into account not only the salaries for the two management contract employees, but also approximately $19,000 in wage related costs over and above the amount requested by Cullman. Defendant's Response to Plaintiff's First Set of Interrogatories at 8.

Some time after this July 22, 1992 amendment, OPP staff became aware that Cullman's salary costs for the administrator and director of nursing were not salary costs as defined by the applicable regulations, but contract labor costs. *Id.* Cullman had acknowledged that these were contract labor costs when it appealed to the MGCRB, which is a separate office from OPP. A.R. 13. Under the Secretary's then-current policies, such costs did not qualify as salary-related costs in the 1988 HCFA wage survey. Thus, OPP had erroneously, but favorably to Cullman, included those costs in the wage survey revisions.[3] Defendant's Response to Plaintiff's First Set of Interrogatories at 8.

Alleging that its Medicare reimbursement would have been roughly $800,000 higher for

the federal fiscal year 1992–93 if it had been reclassified to the Birmingham, Alabama MSA for wage index purposes, Cullman filed suit against the Secretary in this Court on two grounds: (1) Defendant's policy excluding management contract labor from HCFA wage surveys is arbitrary, capricious, and an abuse of discretion, and (2) Defendant's failure to institute a process for coordinating approved wage data revisions with geographic reclassification applications is arbitrary, capricious, an abuse of discretion, and in violation of the due process clause of the Constitution. Plaintiff requests that the Court declare Defendant's policies invalid and remand Plaintiff's application to the Secretary for reconsideration without reference to the disputed policies.

Each party now moves for summary judgment.

## IV. *Legal Analysis*

### A. Preliminary Procedural Considerations

#### 1. Standard of Review

The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et. seq.*, governs nonconstitutional challenges to agency actions. Under the APA, the Court may not set aside an agency action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413–416, 91 S.Ct. 814, 822–24, 28 L.Ed.2d 136 (1971). The Court must ensure that the agency adequately considered all relevant factors and "articulated a rational justification" for its ultimate decision. *National Treasury Employees Union v. Horner*, 854 F.2d 490, 498 (D.C.Cir.1988) (quotations omitted). Agency review, however, is

---

**3.** To summarize, the relevant dates are:

9/25/91: Cullman's application for geographic reclassification submitted to MGCRB.

3/10/92: Cullman's letter explaining discrepancies between wage data in its reclassification application and wage data in its then-current HCFA wage survey submitted to MGCRB.

4/2/92: MGCRB decision.

4/14/92: Cullman's appeal of MGCRB decision to the HCFA administrator, again indicating that its then-current HCFA wage survey was incorrect.

6/11/92: Cullman's requested wage data amendments forwarded to OPP by Blue Cross.

6/18/92: HCFA affirmance of MGCRB's 4/2/92 decision not to reclassify Cullman.

7/22/92: OPP incorporation of Cullman's proposed wage data revisions into its 1988 Wage Survey. Sometime thereafter, HCFA became aware that the 7/22/92 amendments were erroneously, but favorably to Cullman, granted on the basis of contract data labor figures submitted by Cullman.

narrow and the Court must accord substantial deference to an agency's interpretation and administration of a statute. *Blum v. Bacon*, 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982).

Where judicial review is sought for cases involving the Secretary's reclassification policies, "judicial deference is particularly appropriate because the Secretary's obligation to promulgate reclassification guidelines involves an 'accommodation of conflicting policies that were committed to the agency's care by statute....'" *Universal Health Servs. of McAllen, Inc. v. Sullivan*, 770 F.Supp. 704, 718 (D.D.C.1991), *aff'd mem.*, 978 F.2d 745 (D.C.Cir.1992). Indeed, the Court must not substitute its judgment for that of the agency and must presume the validity of the agency's action. *Horner*, 854 F.2d at 498 (citations omitted); *Lloyd Noland Hosp. & Clinic v. Heckler*, 762 F.2d 1561, 1565 (11th Cir.1985).

For constitutional challenges to agency actions, the Court's review is *de novo.* The Court shall make "an independent assessment of the citizen's claim of constitutional" right and need not accord deference to the agency's decision. *Lead Indus. Ass'n, Inc. v. EPA*, 647 F.2d 1130, 1173–74 (D.C.Cir.1980), *cert. denied*, 449 U.S. 1042, 101 S.Ct. 621, 66 L.Ed.2d 503 (1980). *See also Rydeen v. Quigg*, 748 F.Supp. 900, 905–906 (D.D.C. 1990) (court must independently assess the facts and the law), *aff'd mem.*, 937 F.2d 623 (Fed.Cir.1991); *cert. denied*, 502 U.S. 1075, 112 S.Ct. 974, 117 L.Ed.2d 138 (1992).

The parties do not dispute, and the court agrees, that these issues are appropriate for summary judgment. *See Horner*, 854 F.2d 490; *Rydeen*, 748 F.Supp. 900.

## 2. Jurisdiction

A strong presumption in favor of judicial review of administrative action exists unless there is "clear and convincing" evidence that Congress intended to preclude such review. *Universal Health, supra*, 770 F.Supp. at 710 (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511–12, 18 L.Ed.2d 681 (1967)). In this case, 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II) expressly prohibits judicial review of the Secretary's decisions with respect to individual reclassification applications. *Universal Health*, 770 F.Supp. at 710. However, the Court may review general collateral challenges to the policies and procedures underlying the Secretary's reclassification decisions. *Id.* Indeed, with respect to a challenge to a Medicare policy that authorized different amounts of reimbursement for similar services, the Supreme Court "recognized that review of individual determinations ... was foreclosed, but upheld the collateral attack on the regulation itself, emphasizing the critical difference between an individual amount determination and a challenge to the procedures for making such determinations." *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 497–498, 111 S.Ct. 888, 899, 112 L.Ed.2d 1005 (1991) (citing *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986)).

Here, Cullman requests that the Court review and invalidate two policies employed in assessing reclassification applications: (1) the exclusion of management contract labor from wage data, and (2) the failure to assure that all appropriately submitted wage corrections are considered. Cullman further requests that the Court remand Plaintiff's application to the Secretary to be reconsidered without reference to the challenged policies.

Cullman's claims are directly comparable to those in *Universal Health*, where the plaintiff sought an injunction requiring the Secretary to reconsider the plaintiff's reclassification application without reference to a policy that the plaintiff requested the Court to invalidate. The plaintiff in *Universal Health* further alleged that the disputed policy was the plaintiff's sole obstacle to qualifying for reclassification. *Universal Health*, 770 F.Supp. at 709 (D.D.C.1991). Although the relief sought in *Universal Health* would "necessarily affect the reclassification process," the court found that the plaintiff's claims were collateral and therefore judicially reviewable. *Id.* at 711, n. 8. Similarly, in the case at bar, Cullman maintains that, if the wage data for the hospital's Administrator and Director of Nursing were considered

in its reclassification application, Cullman would meet the criteria for reclassification. Thus, even though a decision on the procedural issues in this case may well affect the outcome of Cullman's reclassification proceeding, it is clear that Cullman "does not seek direct review of the reclassification decision." *Id.* Agreeing with the reasoning of *Universal Health,* this Court also concludes that it has jurisdiction to review the challenges to the Secretary's reclassification policies and to grant the relief sought by Cullman.

*Sierra–Nevada Memorial–Miners Hosps., Inc. v. Shalala,* No. 9102198 TFH/DAR (Mar. 31, 1993) (Magistrate Judge's Report and Recommendation, subsequently adopted by Judge Hogan on Apr. 26, 1993), which presents a factual scenario very similar to that of the present case, persuasively sets forth the rationale for the exercise of jurisdiction over review of the interplay between the wage data correction policy and the geographic reclassification process. The *Sierra–Nevada* plaintiffs challenged the Secretary's unwritten and unpublished policy allowing correction of HCFA wage data only if certain procedures were followed. Relying on *Universal Health* and *Michigan Academy,* the magistrate judge concluded that a challenge "to the method by which the [MGCRB] accepts and considers wage data is no different than the challenges asserted in" those cases. *See also Sierra–Nevada Memorial–Miners Hosps., Inc. v. Shalala,* 1994 WL 675720 (Nov. 21, 1994) (unpublished) (granting summary judgment to Secretary on substantive challenges to reclassification and wage data policies).

The Secretary's arguments against this Court's exercise of jurisdiction are not persuasive. First, the Secretary argues that *McNary* is inapplicable because the statute in *McNary* did not expressly preclude review of·agency decisions with respect to individual cases. However, the Supreme Court's interpretation of the jurisdictional provisions of the statute in *McNary* puts it on all fours with the statute at issue here. There, the Supreme Court interpreted the statute as precluding "direct review of individual denials." *McNary, supra,* 498 U.S. at 492, 111

S.Ct. at 896. Whether a statute explicitly precludes direct review or is interpreted to do so, the result is the same: the District Court does not have jurisdiction to review the merits of individual claims. However, such lack of jurisdiction over review of individual cases does not preclude review of "general collateral challenges ... to unconstitutional practices and policies." *Id.* This Court sees· no reason to deviate from this settled law. Indeed, the *Universal Health* court relied upon the Supreme Court's "express statutory preclusions of judicial review" of individual decisions in *McNary. Universal Health,* 770 F.Supp. at 712 (citing *McNary,* 498 U.S. at 491–493, 111 S.Ct. at 896 (1991)).

Similarly, the Secretary's assertion that *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), precludes judicial review of all claims, except as specified, arising under the Medicare Act is irrelevant to the matter before this Court. It is true that judicial review of individual reimbursement claims is precluded by the Medicare Act. *Id.* at 614, 104 S.Ct. at 2021. However, such preclusion does not apply in this case. The plaintiffs in *Ringer* sought a "substantive declaration" that their expenses could be reimbursed. *Id.* In the case at bar, Cullman does not seek to be declared reclassified or qualified for reclassification. Cullman merely seeks, and the Court has jurisdiction to declare, that Cullman "be entitled to have [its] case files reopened and [its] application[ ] reconsidered" upon invalidation of the disputed policies. *McNary, supra,* 498 U.S. at 495, 111 S.Ct. at 898.

Finally, the Secretary submits that, in the only instance in which a court has invalidated a reclassification policy, the court denied the plaintiff's request to remand for reconsideration of its application. *Athens Community Hospital, Inc. v. Shalala,* 21 F.3d 1176 (D.C.Cir.1994). Therefore, the Secretary argues, this Court does not have the power to grant Cullman's requested relief and, therefore, Cullman has no standing. The Court need not reach this issue because of its ultimate disposition of the case on its substantive merits.

The Secretary therefore fails to overcome the strong presumption that this Court has jurisdiction to review the challenged policies.

### 3. *Chevron* Review

Judicial review of an agency's construction of a statute it administers is guided by the two-pronged analysis established in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, if Congress has directly and unambiguously expressed its intent regarding the disputed issue, the Court must "give effect" to that intent. *Id.* at 842–843, 104 S.Ct. at 2781–2782. Second, if both the statute and the congressional intent are ambiguous as to the disputed issue, the Court must determine whether the agency's action was based upon a "permissible construction of the statute." *Id.*

In the instant case, Cullman acknowledges that Congress has neither specified particular wage data to be included in HCFA wage surveys nor outlined a process that assures consideration, for reclassification purposes, of properly submitted corrections to wage data. Cullman concedes, therefore, that Congress has not clearly demonstrated its intent with respect to the challenged policies. Thus, the issue before the Court is whether the challenged policies are permissible interpretations of the Medicare Act.

Under the *Chevron* permissible construction standard, the Court grants substantial deference to the Secretary's decisions, particularly in light of the complex and far-reaching policy issues involved in promulgating reclassification regulations. *Universal Health, supra,* 770 F.Supp. at 718. *See also Chevron, supra,* 467 U.S. at 844–845, 104 S.Ct. at 2782–2783 (quoting *United States v. Shimer,* 367 U.S. 374, 382, 383, 81 S.Ct. 1554, 1560, 1560–1561, 6 L.Ed.2d 908 (1961)). For the following reasons, the Court concludes that the challenged policies fall well within the bounds of agency discretion and accord those affected due process of law.

### B. Substantive Challenges

### 1. The Interplay of the Wage Data Correction and Geographic Reclassification Processes

■ Cullman challenges the Secretary's wage data correction policy as failing to assure that properly submitted data corrections are considered in geographic reclassification determinations. Cullman claims that those policies are impermissible interpretations of the Medicare statutes and that the procedures thus established violate due process. For the following reasons, the Court concludes that the disputed policy is reasonable and well within the bounds of due process required by the Constitution.

First, the only wage data considered in reclassification decisions is taken from the current version of the HCFA wage survey, including any corrections formally processed by the time of decision. 42 C.F.R. § 412.230(e)(2); 56 Fed.Reg. 25477 (June 4, 1991); 55 Fed.Reg. 36760 (September 6, 1990). Giving due deference to the Secretary's discretion to promulgate guidelines that promote policy interests such as accuracy, this Court finds that the Secretary's consideration of only current and properly approved data is a reasonable exercise of agency discretion. See *Universal Health,* 770 F.Supp. at 718. Accuracy is a particularly significant interest given that the Medicare Act bars re-adjudication of individual reclassification applications. 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II).

When Cullman submitted its reclassification application on September 25, 1991, it ought to have been well aware of the applicable federal regulations, which had been published at least two months earlier. However, Cullman gave no indication that its data was incorrect until March 10, 1992, when it attempted informally to explain discrepancies between its 1988 HCFA Wage Survey data and the data submitted to the MGCRB with its reclassification request. Cullman still took no formal action to have its data amended until June 11, 1992, when its fiscal intermediary forwarded Cullman's proposed data corrections to OPP. Thus, OPP did not receive Cullman's wage data corrections until nearly nine months after Cullman first submitted its application for reclassification and roughly two months after it submitted its appeal to the HCFA Administrator. Thus, Cullman was clearly dilatory in prosecuting its own cause.

Second, the Court finds that the Secretary's policy of processing wage data corrections as they are received is an eminently reasonable procedure for considering data corrections in reclassification adjudications. Deposition of HCFA official Anne Rudolph at 26 (requests for wage revisions were considered "as they came in"). To review corrected data in the order in which it is received promotes procedural fairness. Indeed, to give preference to Cullman's request for corrections over others would be to put Cullman "at the head of the queue" and move the others in line one step back. See *In re Barr Labs.*, 930 F.2d 72, 75 (D.C.Cir.1991); *cert. denied*, 502 U.S. 906, 112 S.Ct. 297, 116 L.Ed.2d 241 (1991). Further, unless Cullman can demonstrate that it has been singled out for unfavorable or discriminatory treatment or that its wage data corrections are "plainly more urgent" than other hospitals, this Court has "no basis for reordering agency priorities." *Id.* at 75–76. Again, the Court recognizes that substantial deference must be paid to the Secretary's "unique and authoritative position." *Id.* at 76.

Moreover, if, instead of taking wage data revision requests out of turn, the MGCRB or HCFA Administrator were to delay reclassification proceedings pending wage revision determinations, the overall process would be unwieldy. The Secretary requires that any communications between the reclassification adjudicators and wage revision personnel be in writing and that copies of the communications be sent to any affected parties and placed in the record. 42 C.F.R. §§ 412.264(c)(1), 412.278(e). Moreover, Cullman acknowledges that the regulation at issue was established to protect the interests of the hospitals. To require that determinations be made for any and all pending data corrections before ruling on reclassification applications would substantially delay the process, particularly if consideration of the applications is suspended pending final approval of such corrections. This delay would be significant given the Secretary's 180 day deadline for issuing decisions on reclassification applications and 90 day deadline for issuing decisions on appeals. 42 U.S.C. § 1395ww(d)(10)(C)(iii)(I) and (II). Further, given the fact that, at the time, the MGCRB

was a new organization, it was not unreasonable for the Secretary to conclude that it should not, even for the limited purpose of geographic review, approve wage data corrections. In light of the alternatives, the Court finds that the Secretary's policy of considering wage data revision requests in the order in which they are received, without the aforementioned communication between reclassification adjudicators and wage revision personnel, is reasonable.

Third, Cullman complains about what it perceives as the lack of coordination between OPP and the MGCRB. However, the Secretary's requirement that OPP forward wage data revisions to the MGCRB or the HCFA Administrator as soon as they are granted evidences the efforts of the agency to ensure that the procedure is reasonable and coordinated. 56 Fed.Reg. 25477 (June 4, 1991). In fact, according to agency records, over the relevant period of time, March 1992 through July 1992, the Secretary released four memoranda containing more than one hundred data revisions. Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Exhibit 3. Therefore, the Secretary's procedure is not only coordinated, but also reasonably speedy.

Cullman's complaint, ironically, is that the review of the MGCRB decision denying it reclassification proceeded too quickly. Cullman apparently wants two separate offices within a large government agency to change their internal communication procedures to allow MGCRB decisions to be suspended pending wage data correction review. The courts are not in the business of ordering agencies to craft and follow hand-tailored procedures for each party who complains that it was adversely affected by existing procedures. Even assuming, *arguendo*, that there was some inequity in the Secretary's procedures, the fact that, on occasion, a rational, fair, and permissible procedure produces individual inequities does not justify nor compel invalidating it. Cullman was on notice of the procedure and did not vigorously pursue its cause within the parameters of that procedure.

■ Cullman further argues that what it perceives as the lack of coordination between OPP and the MGCRB violates due process. Due Process requires that a plaintiff have an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (citations omitted). To determine whether an official action violates the due process clause of the Constitution, the Court must consider three factors: (1) the private interest affected by the official action; (2) the risk of "erroneous deprivation" of the private interest as a result of the official action and, if any, procedural safeguards for the action; and (3) the Government's interest, including the function involved and any additional fiscal or administrative burdens that a procedural safeguard might entail. *Id.* at 335, 96 S.Ct. at 903. The extent of procedural due process required is thus "influenced by the extent to which he may be 'condemned to suffer grievous loss' and depends upon whether the recipient's interest ... outweighs the governmental interest in summary adjudication." *Goldberg v. Kelly*, 397 U.S. 254, 262–263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970) (quoting *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646–647, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)); *Mathews*, 424 U.S. at 333, 96 S.Ct. at 901–902 (same).

First, the private interest at stake in the instant case is the additional amount of reimbursement that Cullman would be entitled to if it was reclassified, approximately $800,000. While this is a significant amount of money, there is no evidence that it would constitute a "grievous loss" to Cullman, i.e., its sole source of income, as required by *Goldberg* and *Mathews*. Thus, the Court finds that Cullman fails to assert a private interest that warrants intervention on Due Process grounds.

Second, the Court finds that there is minimal risk of error when the Secretary's policies regarding wage data corrections and their use in reclassification adjudication are followed. As discussed above, the Secretary's policies reasonably serve the interests of accuracy, fairness, and efficiency. More-over, Cullman was on notice of the Secretary's policy of considering only data from the current wage survey and any processed corrections, since they had all been published in the Code of Federal Regulations. Despite these published guidelines, Cullman did not submit corrections to OPP until nearly nine months after submitting its reclassification application. The risk of injury to Cullman would have been slight had the hospital timely submitted its request for revision. The policy in place was clearly set forth, easy to comply with, and did not rely on determinations of credibility and veracity. *See Mathews, supra*, 424 U.S. at 346, 96 S.Ct. at 908. Thus, the Court finds that the disputed policies created very little risk that Plaintiff would be erroneously deprived of its reimbursements.

The final inquiry in the due process analysis weighs the public interest, including the administrative burden of additional procedures. *Mathews*, 424 U.S. at 347, 96 S.Ct. at 908–909. This Court finds that the Secretary's interest is substantial, given the heavy administrative burden associated with either of Cullman's suggested procedural safeguards. First, reviewing wage revision requests out of turn would impinge on the interests of fairness and efficiency. Second, communication between reclassification adjudicators and wage revision personnel so that consideration of an application could be postponed pending final approval of wage data corrections would seriously hinder the administrative process, increase transaction costs associated with review, and raise ethical issues about which the Secretary had already voiced concerns.

Thus, the Court finds that the Secretary's interest is significant, the benefit of additional safeguards minimal, and that both outweigh Cullman's interest in obtaining additional funding. Therefore, upon consideration of the three *Mathews* factors, the Court concludes that the disputed policy does not violate due process.

## 2. The Secretary's Initial Policy of Excluding Contract Wage Data

■ Cullman contests the Secretary's initial decision to exclude contract wage data

from the 1988 HCFA wage survey. According to the Secretary, the data was excluded because it was not uniformly available at that time. Indeed, even though the Secretary did collect data for some types of contract labor, excluding management services, she eventually excluded it because of its inconsistency and unreliability. 55 Fed.Reg. 36036 (September 4, 1990) ("our analysis of the public comments and data from the 1988 survey leads us to propose excluding contract services from the current wage index. This decision stems from the industry's concern about hospitals' ability to accurately track and record contract labor hours ..."). The Secretary found that only 50% of hospitals reported contract labor data, and that at least 11% of the remaining 50% failed to report such data because they had been unable to determine accurately the hours worked by contract personnel. *Id.* Therefore, in the interest of fairness to all hospitals, the Secretary ultimately decided to exclude all contract wage data from the final 1988 HCFA wage survey. *Id.* The Secretary further proposed to develop more detailed reporting guidelines so that reliable contract labor wage data might be incorporated into future wage surveys. *Id.*

The Secretary has since modified her policy and now includes all contract wage data. 59 Fed.Reg. 45330, 45355 (September 1, 1994). In particular, in response to concerns voiced after the 1988 wage survey that the exclusion of the data disadvantaged rural hospitals, the new policy includes management contract wage data. Cullman asserts that this change demonstrates that the Secretary's initial policy of excluding contract wage data was unreasonable.

The Court does not agree. It is well within the Secretary's discretion to alter existing policy in light of changed circumstances or new information. *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade,* 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973); *International Ladies' Garment Workers' Union v. Donovan,* 722 F.2d 795, 814, n. 33 (D.C.Cir.1983). The Secretary's previous exclusion of management contract labor was reasonable in light of her assessment of the inadequacy of the information available to her at that time. Further, this Court finds that the Secretary's decision to exclude the collected contract data from the final 1988 HCFA wage survey was reasonable given that the Secretary, in her considered judgment, found that data to be unreliable.

In any event, Cullman was not harmed by the Secretary's policy of excluding contract labor from the 1988 HCFA Wage Survey and revisions. When Cullman's revision request was processed, HCFA erroneously included data on Cullman's Administrator and Director of Nursing, who were both contract employees. If the Secretary's then-existing policies had been followed, the wage data would not have been revised as favorably to Cullman as it was when contract data was erroneously included.

## V. Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment shall be **denied,** and Defendant's Motion for Summary Judgment shall be **granted.**

An Order shall accompany this Opinion.