# United States Court of Appeals
## For the First Circuit

---

No. 01-1614

JORDAN HOSPITAL, INC.,

Plaintiff, Appellant,

v.

DONNA E. SHALALA, ETC., ET AL.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Stahl, Senior Circuit Judge,

and Lynch, Circuit Judge.

---

Bruce A. Singal, with whom Paul M. Barrett, William C. Athanas, and Donoghue, Barrett & Singal, P.C., were on brief for appellant.

Anita Johnson, Assistant United States Attorney, with whom James B. Farmer, United States Attorney, was on brief for appellee.

January 10, 2002

**STAHL, Senior Circuit Judge**. Plaintiff-Appellant, Jordan Hospital, Inc. ("Jordan"), filed this lawsuit challenging the dismissal of its request for reclassification into a neighboring geographic region. Success in obtaining reclassification would have entitled Jordan to an additional $1.8 million in Medicare reimbursements for the fiscal year in question. The district court dismissed Jordan's complaint for lack of subject matter jurisdiction under 28 U.S.C. § 1331, and Jordan now appeals.

First, Jordan disputes the district court's conclusion that judicial review of this administrative decision is precluded by law. Second, Jordan challenges the validity of the implementing regulations underlying the reclassification process, see 42 C.F.R. § 412 et seq., as inconsistent with the statutory scheme set forth in 42 U.S.C. § 1395ww, and alleges that its procedural due process rights have been violated. Finally, Jordan posits that the district court erred because the statutory deadline for filing a reclassification application is subject to the doctrine of equitable tolling. Finding all of Jordan's arguments meritless, we affirm.

**I.**

Jordan, a participating provider in the Medicare program,[1] is located in Plymouth, Massachusetts, but has regularly applied, under the prospective payment system ("PPS"), for reclassification to the Barnstable-Yarmouth (Cape Cod) area. Under the PPS, reimbursement rates are determined by using factors that include (1) the average standardized amount of allowable individual hospital inpatient operating costs, and (2) the area wage index applicable to the hospital. Reclassification allows a hospital to utilize the standardized operating costs or wage index, or both, of a neighboring region if higher than the prevailing rate in its own geographic area, to calculate its prospective reimbursement. A hospital requesting reclassification must submit average hourly wage ("AHW") data obtained from the Health Care Financing Administration ("HCFA") hospital wage survey, which is "used to construct the wage index in effect for prospective payment purposes during the fiscal year prior to the fiscal year for which the hospital requests reclassification." 42 C.F.R. § 412.230(e)(2)(i)(A). The criteria for obtaining wage index reclassification are set forth in 42 C.F.R. § 412.230(e), and include, *inter alia*, a requirement that the hospital's AHW be at

_____

[1] Medicare provides for the payment of inpatient hospital and other health services furnished to eligible aged and disabled individuals. See 42 U.S.C. § 1395 et seq.

-4-

least 108% of the AHW of the hospitals in the area in which the hospital is located, and the hospital's AHW be at least 84% of the AHW of hospitals in the area to which it seeks to be redesignated. Id. § 412.230(e)(1).

Prior to the promulgation of the final PPS rates for an upcoming fiscal year, HCFA is required to adjust the rates to incorporate the effects of any reclassifications that have been approved. The agency's initial task is to recompute the wage index for such year. Once the necessary wage index adjustments have been completed, the agency must ensure that the effects of the reclassification process are "budget neutral."[2]

Pursuant to 42 U.S.C. § 1395ww(d)(10), the Medicare Geographic Classification Review Board ("Board") is authorized to rule on applications submitted by hospitals seeking reclassification to an adjacent geographical area. A hospital seeking reclassification for a fiscal year must submit its application to the Board "not later than the first day of the 13-month period ending on September 30 of the preceding fiscal year." Id. § 1395ww(d)(10)(C)(ii). The Board is required to render its decision on the application "not later than 180 days

---

[2] The "budget neutrality" principle requires that HCFA make any adjustments necessary to ensure that the aggregate payments to be made under the PPS as a result of any reclassifications are equal to the aggregate payments that would have been made absent these reclassifications. 42 U.S.C. § 1395ww(d)(8)(D).

after [this] deadline . . . ." Id. § 1395ww(d)(10)(C)(iii)(I). If dissatisfied with the Board's decision, a hospital has 15 days to appeal the decision to the Administrator of HCFA, who is required to issue a decision on the appeal "not later than 90 days after the appeal is filed." Id. § 1395ww(d)(10)(C)(iii)(II). HCFA's decision, which becomes the final decision of the Secretary of Health and Human Services ("HHS"),[3] "shall be final and shall not be subject to judicial review." Id.

Jordan filed its application for reclassification, for wage-index purposes, to the Cape Cod Massachusetts Metropolitan Statistical Area ("Cape Cod MSA") for Fiscal Years ("FYs") 1998 and 1999 in a timely manner and these requests were approved by the Board. As a result, Medicare reimbursed Jordan for those fiscal years according to the wage-index value calculated for the Cape Cod MSA rather than that of Jordan's own geographic area. However, Jordan did not timely file a request for

---

[3] Although the statute states that the Secretary of Health and Human Services ("Secretary") shall hear any appeals from adverse decisions by the Board, the Secretary has delegated this function to the Administrator of HCFA. See 55 Fed. Reg. 36,766 (1990), as amended June 4, 1991 ("The Secretary has delegated this authority to the HCFA Administrator in cases in which an unsuccessful hospital appeals the MGCRB's decision. Thus, in these cases the Administrator's review is the final Department review of MGCRB decisions provided for in section 1886(d)(10)(C)(iii)(II) of the Act."); see also 57 Fed. Reg. 39,826 (1992).

reclassification to the Cape Cod MSA for FY 2000 by the statutory September 1, 1998 deadline because the hourly wage data published in the July 31, 1998 Federal Register indicated that Jordan did not qualify.

As it turned out, the wage data published in the July 31, 1998 Federal Register had been incorrectly calculated because the Cape Cod Hospital had submitted inaccurate wage data to HCFA. Upon learning of this error, Jordan filed a reclassification application for FY 2000 on August 23, 1999, almost a year after the expiration of the statutory filing deadline and 24 days after the publication of the final PPS rates for FY 2000. On August 24, 1999, the Board dismissed Jordan's application on the basis that the request was untimely, rendering Jordan ineligible to receive the additional $1.8 million in Medicare program reimbursement to which it would have been entitled had it been reclassified. Jordan appealed, and the HCFA Administrator affirmed the dismissal on September 28, 1999. On October 7, 1999, Jordan requested that the Administrator amend her decision, but this request was denied on October 12, 1999.

On April 7, 2000, after exhausting all administrative remedies, Jordan filed a complaint in the district court, alleging a violation of its due process rights under the Fifth

and the Fourteenth Amendments, and seeking a declaration that HCFA's rules and regulations are invalid, both facially and as applied to it.  On August 18, 2000, the defendants filed a Rule 12(b)(1) motion to dismiss on the ground that the district court lacked subject matter jurisdiction under 28 U.S.C. § 1331.  On March 21, 2001, the district court granted the defendants' motion.  Jordan filed a timely notice of appeal.

## II.

We review *de novo* a district court's dismissal for lack of subject matter jurisdiction.  Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 44 (1st Cir. 2001).

**A.**

Defendants argued, and the district court agreed, that Jordan's claim was barred by the "no review" provision of the Medicare Act, 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II), which specifically states that "[t]he decision of the [Administrator] shall be final and shall not be subject to judicial review." On appeal, Jordan contends that § 1395ww(d)(10)(C)(iii)(II), when examined in conjunction with related statutes and regulations, does not bar its claim, emphasizing the fact that there is a "strong presumption that Congress intends judicial review of administrative action." Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 670 (1986).

This presumption, however, is not irrebuttable, and can be overcome when specific statutory language or legislative history indicates otherwise, or where congressional intent to preclude judicial review is "'fairly discernible' in the detail of the legislative scheme." Id. at 673 (quoting Block v. Cmty. Nutrition Inst., 467 U.S. 340, 349, 351 (1984)). To prove that Congress has shielded administrative decisions from judicial scrutiny, an agency must show by "clear and convincing evidence" that this was Congress's intent. Abbott Labs. v. Gardner, 387 U.S. 136, 141 (1967) (internal quotations omitted). Jordan insists that HCFA has not satisfied this heavy burden. We

-9-

disagree.  The unequivocal language of the "no review" provision clearly indicates that Congress intended to preclude judicial review of this matter.  Section 1395ww(d)(10)(C)(iii)(II) explicitly provides that reclassification decisions "shall not be subject to judicial review."  By using such plain and unambiguous language, Congress made its intent perfectly clear. Furthermore, the rationale for nonreviewability is eminently logical.  First, HCFA's strict, yet manageable, deadlines ensure that each hospital's classification for a fiscal year is firmly in place in time to allow HCFA to make any necessary wage index revisions and budget neutral adjustments.  See 62 Fed. Reg. 45,966, 45,987 (1997).  Second, adherence to these strict dates allows HCFA to publish the rates in final form sixty days prior to the start of a fiscal year.  See 56 Fed. Reg. 25,458, 25,466 (1991) ("[C]ongress specified these very tight time frames in order to ensure that the effects of reclassifications could be reflected in the new standardized amounts and wage index values . . . that go into effect on October 1 of each year."). Subjecting the Administrator's untimeliness decision to judicial review would frustrate this expressly articulated congressional interest in finality, which is particularly crucial for planning purposes.

In a further attempt to bypass the "no review" provision, Jordan posits that there is a material difference between "decisions" on the merits and "dismissals" of applications for untimeliness, rendering "dismissals" reviewable even though all other "decisions" are immune from judicial scrutiny. We reject Jordan's attempt to draw a meaningful distinction between these two terms. In the section outlining the procedures for obtaining administrative review of an adverse ruling by the Board, the regulations offer the right to appeal either a Board "decision" on the merits, or a "dismissal" for untimeliness, to the Administrator. See 42 C.F.R. § 412.278(a) ("A hospital . . . dissatisfied with the MGCRB's decision regarding its geographic designation may request the Administrator to review the MGCRB decision. (A hospital . . . may also request that the Administrator review the MGCRB's dismissal of an application as untimely filed or incomplete, as provided in § 412.256(d).)"). A decision by the Administrator issued pursuant to § 412.278(a) is a "final Departmental decision . . . . not subject to judicial review." Id. § 412.278(f)(3). Consequently, there is no basis for any distinction between the terms "dismissal" and "decision." Moreover, we note as a policy matter that the distinction Jordan proposes would not only disrupt HCFA's efforts to review

applications promptly but would also undermine its ability to publish final payment rates under the PPS in a timely manner. Accordingly, we find that Jordan is precluded from seeking judicial review of the dismissal of its application for redesignation.[4]

---

[4] Jordan also alleges that it is entitled to judicial review of its claim under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"). "In the absence of a contrary statutory provision, the APA entitles a person aggrieved by a final agency action to judicial review . . . ." Conservation Law Found., Inc. v. Busey, 79 F.3d 1250, 1260-61 (1st Cir. 1996) (citing inter alia 5 U.S.C. § 702). The APA does not, however, provide "an independent source of subject matter jurisdiction." Id. In this case, § 1395ww clearly precludes judicial review of these types of administrative decisions, and the regulations are consistent with that mandate. Therefore, the APA does nothing to bolster Jordan's position.

**B.**

In the face of this clear congressional mandate against review, Jordan lodges a constitutional challenge, arguing that its procedural due process rights were violated because it was denied an opportunity to be heard on the merits of its reclassification application. More specifically, Jordan alleges that HCFA's publication of erroneous information gave it inadequate notice of its eligibility, thus causing Jordan to file late. Defendants, on the other hand, claim that Jordan has merely attempted to "cloak" its statutory argument with a constitutional one, and insist that, although a gate-closing statute may not preclude consideration of a colorable constitutional claim, a party may not avoid an unambiguous no judicial review provision simply by asserting a challenge "cloaked in constitutional terms." Sugrue v. Derwinski, 26 F.3d 8, 11 (2d Cir. 1994).

To prevail on its procedural due process claim, Jordan must show both that it had a recognized liberty or property interest,[5] and was deprived of that interest without adequate

_____

[5] To date, no federal court has decided whether a physician who provides Medicare services has any type of property interest in receiving payment for those services. The Second Circuit has suggested, in cases involving state Medicaid providers, that some form of property interest may exist under these circumstances. See Tekkno Labs. v. Perales, 933 F.2d 1093, 1099-1100 (2d Cir. 1991) (Oakes, C.J., concurring) (suggesting

notice or a meaningful opportunity to be heard.  Mathews v. Eldridge, 424 U.S. 319, 332-35 (1976).  Assuming, without deciding, that Jordan has a legitimate property interest in receiving reimbursement payments,[6] we must then determine whether Jordan raises a colorable constitutional claim. We find that it has not.

HCFA's regulatory scheme provides hospitals with a meaningful opportunity to be heard on reclassification, and accords them sufficient procedural protections.  HCFA's publication of erroneous data, while unfortunate, did not deprive Jordan of its rights.  HCFA takes significant steps to insure that the wage data obtained from hospitals subject to PPS are reasonably accurate.  See 63 Fed. Reg. 25,576, 25,587 (1998); 63 Fed. Reg. 40,954, 40,966-74 (1998) (discussing the development of the FY 1999 wage index).  Jordan could not

that Medicaid provider has a property interest in reimbursement for Medicaid services already performed) (quoting Oberlander v. Perales, 740 F.2d 116, 120 (2d Cir. 1984)); but see Yorktown Med. Lab., Inc. v. Perales, 948 F.2d 84, 89 (2d Cir. 1991) (holding Medicaid provider did not have property interest in payments under Medicaid Act or New York Department of Social Service regulations for claims that were pending investigation).

[6] But see Painter v. Shalala, 97 F.3d 1351, 1358 (10th Cir. 1996) ("Although [a physician] may have a recognizable property interest in receiving payment in accordance with the fee schedule . . . there is nothing in the Medicare Act which would have led a reasonable physician to believe that he might be entitled to a greater payment than was outlined in the Secretary's fee schedule.").

realistically have assumed that the wage index information would always be accurate, and that if an error were found, it would be remedied in time to permit a reclassification request. Cf. Your Home Visiting Nurse Servs., Inc. v. Shalala, 525 U.S. 449, 455-56 (1999) ("given the administrative realities . . . . [t]he few dozen fiscal intermediaries often need three years within which to discover overpayments in the tens of thousands of [reimbursement determinations] that they issue"). If anyone is to "blame" in this case, it would seem to be Cape Cod Hospital for reporting incorrect data, rather than HCFA. Accordingly, we find that Jordan's constitutional challenge to the reimbursement scheme was properly rejected by the district court.

## C.

Lastly, Jordan asserts that the court should rely upon equitable tolling principles to excuse its tardiness. Jordan relies heavily upon Bowen v. City of New York, 476 U.S. 467 (1986), a class action challenging an internal policy of the Secretary of Health and Human Services that had resulted in the denial or termination of the class members' benefits. Specifically, the Court addressed the issue of whether equitable tolling applied to save the claims of class members that had been filed outside the 60-day time limit as provided for by 42 U.S.C. § 405(g). Id. at 480. The Court found that equitable

-15-

tolling was permissible in that case because it would be fully consistent with the overall congressional purpose (i.e., ensuring that disabled citizens received their benefits), and that tolling would promote the interests of both the claimants and the government. Id. at 480-81.

Bowen, however, does not bear the weight of Jordan's argument in this case. First, the statute in Bowen mandated the action be filed "within sixty days . . . or within such further time as the Secretary may allow." Id. at 472 n.3. Although the statute in this case afforded Jordan a longer time to file an application for reclassification, it did not provide for discretionary extensions, except for "good cause." 42 C.F.R. § 412.256(c)(2). Jordan still would have had to submit its application by September 1 to be eligible for any discretionary extension for good cause, which it did not do. Second, while the statutory language in Bowen expressed Congress's clear intent to allow tolling in some cases, in this case tolling would be antithetical to the accomplishment of the statute's objectives. Congress apparently found it preferable to allow an occasional unfairness in an individual case to go unaddressed in

order to maintain a more workable hospital reclassification process as a whole.[7]

An examination of two pivotal Supreme Court decisions further reinforces our view that equitable tolling would be inappropriate here.  In Irwin v. Dep't of Veterans Affairs, 498 U.S. 89 (1990), the Court considered the timeliness of an employee's lawsuit charging his government employer with discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  In considering Irwin's claims, the Court made clear that the "same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States."  Irwin, 498 U.S. at 95-96.  The Court reached this decision after determining that a rule making equitable tolling applicable to both public and private defendants alike was "likely to be a realistic assessment of legislative intent as

---

[7] We note that Cape Cod Hospital's reporting mistakes may, in fact, have erroneously rendered Jordan eligible for reclassification in FY 1999.  Consistent with its interest in finality, however, HCFA has apparently not attempted to recover any excessive reimbursements paid to Jordan for that year. Jordan's underpayment in FY 2000 would seem to compensate somewhat for any windfall it enjoyed in FY 1999.

well as a practically useful principle of interpretation." Id. at 95.[8]

In United States v. Brockamp, 519 U.S. 347 (1997), the Supreme Court reviewed the case of a taxpayer who had submitted an administrative refund claim several years after the applicable filing period set forth in § 6511 of the Internal Revenue Code of 1986 had elapsed. The Court considered whether, under Irwin, the statutory filing deadline could be extended for an "equitable" reason, which in the petitioner's case was the fact that his mental disability had caused the delay. Id. at 348. The Court concluded that, in contrast with its generosity for Title VII claims, Congress did not intend for the "equitable tolling" doctrine to apply to § 6511's time limitations for filing tax refund claims. Id. at 352-53. The Court noted that § 6511 sets forth its time limitations in a highly detailed and technical manner, reiterates them several times in different ways, imposes substantive limitations, and delineates explicit exceptions to its basic time limits, and equitable tolling is not included among them. Id. at 350-52.

---

[8] The Court ultimately ruled, however, that equitable tolling was inappropriate in Irwin's case because his late filing was caused by "what [was] at best a garden variety claim of excusable neglect." Irwin, 498 U.S. at 96.

Likewise, in this case, there are strong reasons to believe that Congress did not want the equitable tolling doctrine to apply. First, the statute states in an "unusually emphatic form," id. at 350, that a "hospital requesting a change in geographic classification . . . for a fiscal year shall submit its application to the Board not later than the first day of the 13-month period ending on September 30 of the preceding fiscal year." 42 U.S.C. § 1395ww(d)(10)(C)(ii). Nothing in this language can be construed as creating or even inferring an implied equitable tolling exception. Irwin, 498 U.S. at 352; see also Becton Dickinson & Co. v. Wolckenhauer, 215 F.3d 340, 350 (3d Cir. 2000) ("the emphatic, non-permissive nature of the [statutory] language . . . suggests that the time limitation at issue cannot be equitably tolled"). We find it implausible that Congress would have wanted the courts to expand the statute's limitation period whenever equitable concerns were present. See United States v. Beggerly, 524 U.S. 38, 48 (1998) ("Equitable tolling is not permissible where it is inconsistent with the text of the relevant statute."). Second, § 1395ww(d)(10)(C)(iii)(I) requires the Board to decide a reclassification request within a strict 180-day time frame in order to avoid eroding HCFA's ability to incorporate the final rates into the wage-index revisions and budget-neutral

adjustments.  Reading an "equitable tolling" exception into the statute would also create "serious administrative problems" for the agency.  <u>Brockamp</u>, 519 U.S. at 353.  Therefore, we conclude that equitable tolling is not available to Jordan in this case.

**III.**

For the foregoing reasons, we affirm the district court's dismissal of Jordan's complaint for lack of subject matter jurisdiction.