ST. BERNARD'S HOSPITAL, INC., et al., Plaintiffs,

v.

Tommy THOMPSON, Secretary of the United States Department of Health and Human Services[1], Defendant.

No. 3:99CV00398 GH.

United States District Court, E.D. Arkansas, Jonesboro Division.

March 20, 2002.

---

5. Because I find that I may not order forfeiture, I need not address Tessman's other arguments.

1. Plaintiffs originally sued Donna E. Shalala, then Secretary of HHS. Tommy Thompson has succeeded her in office. Although the actions in dispute were taken by Shalala, Court will use the masculine pronoun in referring to the Secretary as Thompson has now replaced Shalala as the defendant.

Daryl L. Rice, Eric Zimmerman, Melvin White, McDermott, Will & Emery, Attorneys At Law, Washington, D.C., Paul D. Waddell, Ralph W. Waddell, Denzil Price Marshall, Jr., Barrett & Deacon, Attorneys At Law, Jonesboro, AR, for plaintiffs.

H.E. (Bud) Cummins, United States Attorney, by Michael D. Johnson, Gwendolyn Dewees Hodge, Assistant United States Attorneys, Little Rock, AR, Laura E. Ellis, U.S. Department of Health and Human Services, Office of the General Counsel, Baltimore, MD, for defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

This disputes arises out of the Secretary's promulgation of a final rule set forth at 62 Fed.Reg. 45,966, 45,999 (Aug. 29,

1997) and again at 63 Fed.Reg. 26,318, 26,325 (May 12, 1998) (collectively, the "Final Rule") that plaintiffs contend misinterprets Section 4202(b) of the Balanced Budget Act of 1997 ("Section 4202(b)") and 42 C.F.R. § 412.230 *et seq.* Plaintiffs claim that the Secretary's interpretation of Section 4202(b) as set forth in the Final Rule unlawfully deprives plaintiffs and other hospitals designated as rural referral centers ("RRC") the right to be reclassified to different Metropolitan Statistical Areas ("MSA") for the purpose of receiving increased Medicare reimbursement.

*Statement of Facts*[2]

Plaintiffs are all acute-care hospitals. All are providers of services as defined in the Medicare Act, 42 U.S.C. § 1395x(u), have entered into an agreement with the Secretary to provide services to Medicare beneficiaries pursuant to 42 U.S.C. § 1395cc, and receive reimbursement for services rendered to Medicare beneficiaries. Each hospital had retained RRC status uninterrupted through Federal Fiscal Year ("FFY") 1991.

St. Bernards is located in Jonesboro, Arkansas in Craighead County. Craighead County is within the Jonesboro, Arkansas M.S.A. (Jonesboro MSA) as designated by the Office of Management and Budget ("OMB"), effective June 30, 1996.

East Alabama is located in Opelika, Alabama in Lee County. Lee County was classified as a rural area until it was included in a new MSA, the Auburn–Opelika, Alabama M.S.A. (MSA 0580) which was designated by OMB on June 30, 1999. The Secretary, however, did not implement this change for purposes of the Medicare program until October 1, 1999.

Wesley is located in Hattiesburg, Mississippi, in Lamar County. Lamar County is within the Hattiesburg, Mississippi M.S.A. as designated by OMB, effective July 5, 1994.

Defendant Tommy G. Thompson is the Secretary of the United States Department of Health and Human Services ("HHS") and is responsible for the administration of the Medicare program. The Secretary has delegated the administration of the Medicare program to the Health Care Financing Administration ("HCFA" or "Administrator").

The Medicare program, established under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, pays for covered medical care furnished primarily to eligible aged and disabled persons. Part A, at issue in this case, authorizes payment for covered institutional care, including hospitals.

Under the Medicare Act, an eligible Medicare beneficiary is entitled to have payment made by the Medicare program for inpatient and outpatient hospital services by a hospital that has entered into an agreement with the Secretary to participate in the Medicare program, provided that the applicable Medicare rules and conditions have been met.

Hospitals are paid for inpatient services rendered to Medicare beneficiaries based on prospectively set rates, commonly referred to as the Prospective Payment System ("PPS"). The PPS provides for the prospective payment of operating costs for inpatient services on the basis of a predetermined, specified rate for each patient discharge, according to the individual patient's particular diagnosis. 42 U.S.C. § 1395ww(d). The specific payment rate to be applied depends upon which "diagnosis related group" ("DRG") best character-

---

**2.** Many of the material facts are not in dispute, and the Court has utilized the parties' statements submitted in connection with their motions and responses in setting forth some of the factual background.

izes the patient's diagnoses and treatment. 42 U.S.C. § 1395ww(d)(1)(A)(iii).

The statute contains a complex formula for calculating prospective payment rates. The rates are derived by first calculating the average Medicare allowable costs per discharge during a base year, adjusted for inflation, for each hospital participating in the Medicare program. 42 U.S.C. § 1395ww(d)(2)(A), (B). Adjusted averages for each hospital are then "standardized" to remove the effects of factors including indirect medical costs, wage variations, and "case mix" (that is, the relative complexity and costliness of each hospital's cases). 42 U.S.C. § 1395ww(d)(2)(C).

A hospital's payment under PPS varies in part based on its geographic classification, in particular on whether the hospital is located or deemed to be located within an urban or rural area. 42 U.S.C. § 1395ww(d)(2)(D). An urban area is defined as a Metropolitan Statistical Area ("MSA") or certain other specified localities. 42 U.S.C. § 1395ww(d)(2)(D); 42 C.F.R. § 412.62(f). Any other area is defined as a rural area. *Id.* The statute requires the Secretary to compute a separate average of hospital "standardized amounts" for rural and urban areas. 42 U.S.C. § 1395ww(d)(2)(D). In addition, in making payments to particular hospitals, actual PPS payment rates for each DRG are computed by adjusting the appropriate standardized amount by a "wage index" to account for area wage differences. The wage index which reflects the relative level of wages and salaries for hospital workers in the area where the hospital is located compared to the national average hospital wage level 42 U.S.C. § 1395ww(d)(3)(E).

The Secretary determines a separate wage index for each M.S.A. in the United States, and one wage index per state for rural counties and towns not located in an MSA. The wage index used to adjust Medicare inpatient service payments for an individual hospital is the wage index that the Secretary determines and assigns to the area in which the hospital is physically located. The Secretary recalculates and revises the wage indices annually. This wage index is intended to compensate for regional differences in the costs of providing services. § 1895ww(d)(3)(E); 42 C.F.R. Part 412.62. Generally, under PPS urban hospitals receive a higher reimbursement than rural hospitals.

Congress became concerned that the geographic system resulted in certain inequities such as a hospital in a rural area which had to compete for labor in a nearby urban area being insufficiently reimbursed. Thus, Congress amended the Medicare Act in 1987 and 1988 to enable a number of rural areas to be redesignated as urban areas. *See Athens Cmty. Hosp., Inc. v. Shalala,* 21 F.3d 1176, 1177 (C.A.D.C. 1994).

In 1989, Congress established the Medicare Geographic Classification Review Board ("MGCRB" or "Board") to provide a mechanism for a hospital to request to be reclassified from the area in which it is physically located to another proximate area for purposes of Medicare reimbursement. 42 U.S.C. § 1395ww(d)(10). *See also Skagit County Pub. Hosp. Dist. No. 2 v. Shalala,* 80 F.3d 379, 381 (9th Cir.1996) The MGCRB is an administrative body within HHS which renders decisions on applications by hospitals to be reclassified to different geographic areas for purposes of computing portions of their Medicare payments for inpatient services for a particular fiscal year. 42 U.S.C. § 1395ww(d)(10)(A)–(C). If a hospital can show the MGCRB that its average hourly wage costs are comparable to a geographic area other than, and proximate to, the area in which it is located, and satisfy certain

other criteria, the MGCRB must reclassify the hospital to the new geographic area.[3]

The Secretary issued the Reclassification Regulations to be used by the MGCRB in reviewing applications for reclassification. 42 C.F.R. §§ 412.230 – 412.236. Generally, a hospital applying for wage index geographic reclassification must prove three things: (1) the applicant's wages are higher than those of other hospitals in the area in which the applicant is physically located; (2) the applicant's wages are comparable to those of other hospitals in the area to which the applicant seeks to be reclassified; and (3) the applicant is proximate to the area to which it seeks to be reclassified.

Specifically, the Reclassification Regulations require that to qualify, a hospital must establish the following criteria:

(1) The hospital's average hourly wage ("AHW") must be at least 108% of the AHW of the area in which the hospital is physically located if the hospital is located in an urban area and 106% of the AHW of the area in which the hospital is physically located if the hospital is located in a rural area. 42 C.F.R. § 412.230(e)(1)(iii);

(2) The hospital's AHW must be at least 84% of the AHW applicable to the area to which the hospital is applying if the hospital is located in an urban area and, 82% of the AHW applicable to the area in which the hospital is applying if the hospital is located in a rural area. 42 C.F.R. § 412.230(e)(1)(iv)(A); and

(3) The hospital must be within 35 miles of the area to which it is applying if the hospital is in a rural area, or within 15 miles of the area to which it is applying

if the hospital is in an urban area. 42 C.F.R. § 412.230(b)(1).

A hospital that is designated as an RRC does not have to demonstrate a close proximity to the area to which it seeks redesignation. 42 C.F.R. § 412.230(a)(3)(i). Any hospital that was ever a RRC is exempted from the 108% of 42 C.F.R. § 412.230(e)(3). That is, hospitals with RRC status are exempt from two of the three tests for reclassification.

*Rural Referral Centers*

In 1983, Congress enacted the Social Security Amendments of 1983, which allowed the Secretary to make exceptions and adjustments to the payment amounts taking into the account the special needs of regional and national referral centers. The statute further provided that:

A hospital which is classified as a rural hospital may appeal to the Secretary to be classified as a rural referral center under this clause on the basis of criteria (established by the Secretary) which shall allow the hospital to demonstrate that it should be so reclassified by reason of certain of its operating characteristics being similar to those of a typical urban hospital located in the same census region ... Such characteristics may include, wages, scope of services, service area, and the mix of medical specialities. The Secretary shall publish the criteria not later than August 17, 1984, for implementation by October 1, 1984.

42 U.S.C. § 1395ww(d)(5)(c)(i).

The specific qualifying criteria for RRCs are codified at 42 C.F.R. § 412.96. Part of the regulations in 1984 provided for triennial review of a hospital's RRC status.

---

**3.** If dissatisfied with the Board's decision, a hospital can appeal the decision to the Administrator of HCFA, to whom the Secretary has delegated the function. *See* 55 Fed.Reg. 36,766 (1990), as amended June 4, 1991.

§ 1395ww(d)(10)(C)(iii)(II). HCFA's decision becomes the final decision of the Secretary and shall not be subject to judicial review. *Id. See Jordan Hosp., Inc. v. Shalala*, 276 F.3d 72, 75 (1st Cir.2002).

However, Congress enacted statutory moratoria on performance of the triennial reviews on three occasions. When the third moratorium expired at the end of the cost reporting period that began during FFY 1994, the Secretary implemented the triennial review requirements and some of the hospitals lost their RRC status. *See* 63 Fed.Reg. 26326.

In August, 1997, the Secretary published a final rule with comment period setting forth statutorily required changes to the Medicare hospital inpatient PPS systems. Following issuance of the proposed rule in June, 1997, Congress passed the Balanced Budget Act (BBA) of 1997, which made major changes to the hospital PPS systems. Among the changes enacted was Section 4202(b)(1) which provides: "Any hospital classified as a rural referral center by the Secretary ... for fiscal year 1991 shall be classified as such a rural referral center for fiscal year 1998 and each subsequent fiscal year." *See* Pub.L. No. 105–33, § 4202(b) (1997).

In response to Congress' passage of Section 4202(b), the Secretary promulgated the Final Rule which is set forth at 62 Fed.Reg. at 45999 and 63 Fed.Reg. at 26325 (May 12, 1998). The Final Rule interprets Section 4202(b) and 42 C.F.R. § 412.230 *et seq.* ("the Reclassification Regulations").

The Final Rule reinstated RRC status only for certain hospitals. Four types of hospitals were previously RRCs but no longer at the time Congress enacted Section 4202(b): (1) hospitals that lost their status due to triennial review by HHS; (2) hospitals that lost their status due to MGCRB reclassification; (3) hospitals that lost their status due to OMB reclassifications; and (4) hospitals that voluntarily relinquished RRC status. The Secretary reinstated RRC status to all hospitals that lost the status due to triennial review or MGCRB reclassification. The Secretary

did not reinstate RRC status to hospitals in areas redesignated by OMB as urban. The Secretary determined that hospitals in areas designated as urban by OMB "are no longer physically located in a rural area and they can no longer be classified as 'rural' referral centers." 62 Fed.Reg. at 46000. *See also* 63 Fed.Reg. at 26326 ("OMB's designation of the areas to urban status mean that such hospitals were urban for *all* purposes and thus could no longer qualify as *rural* referral centers.")

In 1999, Congress enacted Section 401 of the Medicare, Medicaid and SCHIP Balanced Budget Refinement Act of 1999 ("Section 401") which amended section 1886(d)(8) of the Medicare Act and created a mechanism through which a hospital located in an urban area could be treated as being located in a rural area for purposes of Medicare reimbursement. Pub.L. No. 106–113, H.R. 3194, 106th Cong. § 401 (1st Sess.1999). Under Section 401, a hospital located in an urban area may qualify to be treated as if it were located in a rural area for purposes of Medicare reimbursement if it meets one of several specified criteria. One such criterion provides that a hospital qualifies for reclassification under Section 401 if it "would qualify as a rural, regional, or national referral center under ... [1886(d)(5)(C)] or as a sole community hospital under [1886(d)(5)(D)] if the hospital were located in a rural area." Pub.L. 106–113. H.R. 3194, 106th Cong. § 401 (1st Sess.1999).

Neither Section 401 nor the conference report for Section 401 refers to Section 4202(b). However, the Secretary in the Final Rule interpreting Section 401, decided to "revisit our policy decision on section 4202(b) of Public Law 105–33." 65 Fed. Reg. 47089 (Aug. 1, 2000). In the policy revision, the Secretary allowed hospitals that had been "previously qualified as an RRC [in 1991] and that lost their status

due to OMB redesignation of the county in which they are located from rural to urban to be reinstated as an RRC." *Id.* Additionally, the Secretary acknowledged that hospitals which had RRC status restored through the revised policy would be eligible for the special treatment extended to all RRCs before the MGCRB. *Id.* "Hospitals would benefit from the waiver of the MGCRB's proximity requirements, as long as they are designated as RRCs at the time the MGCRB acts on their application."

The policy revision took effect as of October 1, 2000, and has no retroactive application. *Id.* The earliest fiscal year that hospitals could acquire reclassification would be FFY 2002. Thus, the Secretary's previous Final Rule interpreting Section 4202(b) governed the designation of plaintiffs's RRC status for FFY 2000 and FFY 2001. The policy revision has no effect on the reimbursement plaintiffs received and continue to receive for those years.

*St. Bernards' Applications*

HCFA initially designated St. Bernard's as an RRC effective for discharges beginning on October 1, 1984. St. Bernard's retained RRC status uninterrupted through FFY 1991. In 1998, the MGCRB and the Administrator found that St. Bernards was an RRC and approved St. Bernards' application for reclassification to the Memphis–MSA for FFY 1999, even though the application was made after the date on which the OMB redesignated as urban the area in which St. Bernards is located (*See* Exhibits 4 and 5 to Plaintiffs' Motion for Summary Judgment).[4]

Prior to the due date of September 1, 1998, St. Bernards submitted an application to MGCRB seeking reclassification from the Jonesboro M.S.A. to the Memphis M.S.A. for purposes of its wage index for FFY 2000. On February 10, 1999, the MGCRB issued its decision denying St. Bernards' request. It found that because St. Bernards is 73.9 miles from the Memphis MSA, it did not satisfy the proximity requirement of 42 C.F.R § 412.230(b). *See* AR 25–26.[5]

St. Bernards made a timely appeal of the MGCRB's decision to the Administrator on February 24, 1999. St. Bernards argued, *inter alia,* that it was exempt from the proximity requirement because: (1) the MGCRB decision expressly stated that St. Bernards is an RRC; and (2) St. Bernards was an RRC at the time it filed its FFY 2000 application because it had been an RRC in 1991 and Section 4202(b) expressly provided grandfather-RRC status to any hospital that was an RRC in 1991.

On April 29, 1999, the Administrator denied St. Bernards' appeal of the MGCRB's decision. The Administrator found that because St. Bernards was located in an urban area, the hospital was not designated as an RRC at the time of the decision, and was not exempt from the proximity requirement for reclassification. *See* AR 6.

St. Bernards timely submitted an application to MGCRB seeking reclassification from the Jonesboro M.S.A. to the Memphis M.S.A. for purposes of its wage index for FFY 2001. The FFY 2001 application was materially the same as St. Bernards' FFY 1999 and 2000 Applications.

On February 8, 2000, the MGCRB denied St. Bernards' FFY 2001 Application, finding that it did not satisfy the proximity

---

4. Although the MGCRB found St. Bernards to be an RRC at the time of its decision, the Administrator noted that its scope of review did not include whether the MGCRB properly designated St. Bernards as an RRC. *See* Ex. 5

to Plaintiffs' Motion for summary Judgment at 7 n. 8.

5. Administrative Record, filed on February 28, 2000, docket entry 11.

requirement. *See* SAR 9.[6] St. Bernards appealed the Board's decision to the Administrator on February 22, 2000. On May 10, 2000, the Administrator denied the appeal, finding that St. Bernards was not designated as an RRC at the time of the MGCRB's decision and therefore was not exempt from the proximity requirement for reclassification. *See* SAR 6–7.

St. Bernards contends that as a result of the these decisions HCFA reimbursed St. Bernards based on the rates associated with the Jonesboro M.S.A. rather the Memphis MSA. St. Bernards claims that it lost about $3.55 million in Medicare reimbursement in FFY 2000 and $3.23 million in FFY 2001.

*East Alabama's Application*

East Alabama was first designated as an RRC by HCFA in November, 1984 and retained that status through FFY 1991. On August 31, 1999, East Alabama filed with the MGCRB an application seeking reclassification from rural Alabama to the Columbus, Georgia–Alabama M.S.A. (MSA 1800) for purposes of its wage index for FFY 2001. At the time of the its application, the Secretary considered East Alabama to be in rural Alabama, and thus it complied with the proximity requirement because it was within 35 miles of the Columbus, Georgia–Alabama MSA.

On February 8, 2000, the MGCRB issued its decision denying East Alabama's reclassification request finding that it did not satisfy the proximity requirement of 42 C.F.R § 412.230(b). *See* SAR 37. The Board based its decision on the fact that on October 1, 1999, the Secretary implemented the OMB's earlier creation of the new Auburn–Opelika, Alabama MSA, and therefore East Alabama was no longer considered to be in a rural area by the Secretary. The MGCRB applied the fifteen-mile urban-to-urban proximity criterion to East Alabama rather than the thirty-five mile rural-to-urban proximity criterion, and found that East Alabama did not meet that criterion. *See* SAR 30.

East Alabama timely appealed the MGCRB's decision to the Administrator on February 22, 2000. East Alabama argued, *inter alia*, that it was exempt from the proximity requirement because East Alabama was an RRC at the time it filed its FFY 2001 application because it had been an RRC in 1991, and Section 4202(b) provided grandfather-RRC status to any hospital that was an RRC in 1991.

On May 10, 2000, the Administrator denied East Alabama's appeal, finding that East Alabama was located in an urban area at the time of the MGCRB's decision and therefore it did not meet the proximity requirement for urban hospitals. *See* SAR 35.

East Alabama contends that as a result of the Secretary's interpretation of Section 4202(b) and the Reclassification Regulations, as of FFY 2001, HCFA has been reimbursing East Alabama based on rates associated with the Auburn–Opelika M.S.A. rather than the Columbus, Georgia–Alabama M.S.A. and that it will lose about $1.25 million in Medicare reimbursement in FFY 2001.

*Wesley's Application*

Wesley was classified as an RRC for FFY 1991. It submitted a timely application to MGCRB seeking reclassification from the Hattiesburg, MS M.S.A. to the Biloxi–Gulfport–Pascagoula, MS M.S.A. (MSA 0920) for purposes of its wage index for FFY 2000. The Board issued its decision on February 16, 1999, finding that Wesley was an RRC. *See* Ex. 13 to Plaintiffs' Motion for Summary Judgment.

---

**6.** Supplemental Administrative Record, filed September 15, 2000, docket entry 26.

Wesley submitted an application to the MGCRB prior to the September 1, 1999, deadline seeking reclassification from the Hattiesburg, MS M.S.A. to the Biloxi–Gulfport–Pascagoula MS M.S.A. (MSA 0920) for purposes of its wage index for FFY 2001. The Board denied the 2001 Application on February 8, 2000, finding that Wesley did not meet the proximity criteria and that the special rules for RRCs were not applicable to Wesley. *See* SAR 59.

Wesley timely appealed the MGCRB's decision to the Administrator on February 21, 2000. Wesley argued, *inter alia,* that it was exempt from the proximity requirement because Wesley was an RRC at the time it filed its FFY 2001 application, it had been an RRC in 1991, and Section 4202(b) provided grandfather-RRC status to any hospital that was an RRC in 1991.

The Administrator, on May 10, 2000, affirmed the Board's decision, finding that Wesley was not an RRC at the time of the Board's decision and therefore it was not exempt from the proximity requirement for reclassification. *See* SAR 56.

Wesley contends that as a result of the Secretary's interpretation of Section 4202(b) and the Reclassification Regulations, as of FFY 2001, HCFA will begin reimbursing Wesley based on rates associated with the Hattiesburg, MS M.S.A. rather than the Biloxi–Gulfport–Pascagoula, MS M.S.A. and that it will lose about $1.14 million in Medicare reimbursement in FFY 2001.

*Current Action*

On October 1, 1999, St. Bernards filed this action challenging the Secretary's Final Rule interpreting Section 4202(b) of the 1997 BBA and 42 C.F.R. § 412.230 as violating its rights under the Administrative Procedure Act ("APA") and the Medicare Act. St. Bernards filed an amended complaint on August 16, 2000, adding East Alabama and Wesley as plaintiffs and add-ing the allegation that the Secretary's Final Rule interpreting Section 4202(b) and 42 C.F.R. § 412.230 violated plaintiffs' rights to equal protection under the Fifth Amendment of the United States Constitution.

Plaintiffs assert that they would be classified as RRCs under the Medicare Act and Section 4202(b) had the Secretary correctly interpreted and applied the statute. That is, the Secretary denied the reclassification applications in direct contravention of Section 4202(b) mandating that all hospitals with RRC status as of FFY 1991, which according to plaintiffs includes them, be redesignated as RRCs for FFY 1998 and thereafter.

As a result, plaintiffs state that HCFA reimbursed plaintiffs based on rates associated with the wrong M.S.A. rather than the M.S.A. to which plaintiffs would have been reclassified had they received RRC status. This has resulted in plaintiffs being reimbursed for inpatient services provided to Medicare beneficiaries at a rate that is lower than that to which they claim they are entitled to under the Medicare Act.

*Analysis*

The parties have filed motions for summary judgment. As plaintiffs note, the disagreements in the case boil down to three legal questions, which are properly determined on summary judgment. The issues in the case are: (1) Is the Secretary's interpretation of Section 4202(b) subject to judicial review? (2) Is the Secretary's interpretation of Section 4202(b) arbitrary, capricious and contrary to law in contravention of the APA? (3) What remedy is appropriate if the Final Rule is found to be invalid?

▇ The Secretary asserts that plaintiffs' claims must be dismissed as they are not justiciable. Thus, before reaching the

merits of the case, the Court must determine whether it has jurisdiction to review this matter.

The Secretary argues that 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II) expressly forecloses review of plaintiffs' claim. That statute provides that the decision of the MGCRB may be appealed to the Secretary and that the "decision of the Secretary shall be final and shall not be subject to judicial review."

 There is a strong presumption in favor of judicial review of an administrative action. *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). The presumption may be overcome by "specific language or specific legislative history that is a reliable indicator of congressional intent or a specific congressional intent to preclude judicial review that is fairly discernible in the detail of the legislative scheme." *Id.* at 673, 106 S.Ct. 2133 (citations and internal quotations omitted).

The Secretary relies on the Ninth Circuit decision in *Skagit County Pub. Hosp. Dist. No. 2 v. Shalala,* 80 F.3d 379 (9th Cir.1996).[7] In *Skagit,* a hospital sought review of the wage correction process which resulted in the denial of its application for geographical reclassification. In rejecting the hospital's argument that it was challenging an agency practice which is subject to judicial review, the court found that the hospital was really seeking a review of the reclassification decision. *Id.* at 386. The court noted that some decisions would be reviewable, such as the validity of the Secretary's guidelines. The *Skagit* court pointed to court's reasoning in *Universal Health Servs. of McAllen, Inc. v. Sullivan,* 770 F.Supp. 704 (D.D.C.

1991), *aff'd,* 978 F.2d 745, 1992 WL 313995 (D.C.Cir.1992) ("*UHS* ") for an analysis of when judicial review is appropriate. The *Skagit* court concluded that the claim of the hospital in that case was one not subject to judicial review.

Plaintiffs counter that the court's holding in *Skagit* is inapropos as they are not seeking review of the Secretary's reclassification decisions *per se.* Rather, their claims challenge the lawfulness and validity of the Secretary's regulations that resulted in the reclassification decisions. They rely on the court's reasoning in *UHS.*

In *UHS,* a hospital challenged the "proximity requirement" guidelines for reclassification promulgated by the Secretary of HHS The court was not persuaded that the hospital's challenge to the validity of the guidelines would interfere with individual reclassification decisions, the reclassification timetable created by the Medicare Act, or the Secretary's duty to ensure budget neutrality. *Id.* at 714–15. The court, relying on Supreme Court decisions of *Michigan Academy* and *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991), found that the statute did not preclude judicial review of the guidelines used by the Board in determining whether a hospital met the criteria for geographic reclassification. 770 F.Supp. at 712 ("The Court does not find that Act's preclusion of individual reclassification determinations to imply a congressional intent to preclude review of the underlying guidelines."). That the relief sought by UHS in terms of an injunction requiring the Board and Secretary to reconsider the classification ap-

---

**7.** The Secretary also relies on *Dubois Reg'l Med. Ctr. v. Shalala,* 1996 WL 636137 (W.D.Pa.1996), *aff'd* 118 F.3d 1575 (3rd Cir. 1997), a district court decision which essentially adopts the reasoning of *Skagit.* In a

Notice of Supplemental Authority, the Secretary refers to *Jordan Hosp., Inc. v. Shalala,* 276 F.3d 72 (1st Cir.2002). *Jordan* merely supports the arguments already advanced by the Secretary and addressed by the Court.

plication might affect the reclassification process did not mean that UHS was seeking direct review of the classification decision. "UHS' challenge is collateral: UHS contends that the proximity requirement was promulgated in violation of the APA." *Id.* at 712 n. 8.

In *Cullman Reg'l Med. Ctr. v. Shalala,* 945 F.Supp. 287 (D.D.C.1996), a hospital sought judicial review of two policies that the Secretary used in assessing reclassification applications: the exclusion of management contract labor from wage data, and the failure to assure that all appropriately submitted wage corrections are considered. *Id.* at 293. Relying on *UHS,* the court found that it had jurisdiction to review the challenges to the Secretary's reclassification policies, even though a decision on the procedural issues in the case might affect the outcome of the hospital's reclassification proceeding.

Like the plaintiffs in *UHS* and *Cullman,* plaintiffs here do not seek Court intervention in the reclassification process. Rather, they challenge the validity of Secretary's regulation underlying the process. As the court in *UHS* stated: "The challenges raised by UHS simply are not the type of judicial interference that Congress sought to avoid. On the contrary, they are the types of challenges traditionally considered by federal courts in reviewing administrative action. To hold otherwise would insulate the Secretary's regulatory promulgations from compliance with federal law for the sake of administrative efficiency in reclassification determinations." 707 F.Supp. at 711. *See also ParkView Med. Assocs. L.P. v. Shalala,* 158 F.3d 146, 148 (D.C.Cir.1998) (court could review hospital's challenge to general rules leading to denial of reclassification).

The Court finds that plaintiffs are not seeking review of the decisions themselves. The Court finds that plaintiffs request review of the validity of the Secretary's reg-

ulation underlying the reclassification decisions. Their claims are therefore subject to judicial review.

■ The Secretary, however, further argues that the Court does not have jurisdiction because plaintiffs' challenge to the regulation is moot. That is, to the extent plaintiffs seek injunctive or declaratory relief regarding the Secretary's regulation, the challenge is now moot. By virtue of the final rule effective October 1, 2000, hospitals that were ever a RRC will be reinstated to RRC status under § 4202(b) if they are located in what is now an urban area. 65 Fed.Reg. 47054, 47089 (2000). Since plaintiffs were once RRCs, plaintiffs were reinstated to RRC status effective October 1, 2000, and will, under the Secretary's current rule, be exempt from meeting the proximity criteria for reclassification for FFY 2002 and arguably future FFYs.

Plaintiffs counter that their claims are not moot. The new policy is applied prospectively, thus plaintiffs are without a remedy for about the three-year period between the enactment of Section 4202(b) and the Secretary's policy revision which took effect in 2000.

■ " '[A] case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.' " *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). Generally, " 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot.' " *Id.* (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)).

The Court in *Davis* set forth a two part test for determining mootness: (1) When "it can be said with assurance that 'there is no reasonable expectation ...' that the alleged violation will occur, ... and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (citations omitted). "The burden on demonstrating mootness 'is a heavy one.'" *Id.*

Here, plaintiffs seek reimbursement for the amounts they did not receive as a result of the alleged unlawful regulation. The Court is persuaded that they have a "legally cognizable interest in the outcome." *See Tallahassee Mem. Reg'l Med. Ctr. v. Bowen,* 815 F.2d 1435, 1448–1451 (11th Cir.1987) (Secretary's new regulation in 1996 did not moot challenge to 1979 regulation where hospitals would receive less under 1986 rule than pre–1979 regulation) *See also* Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 13A *Federal Practice and Procedure* § 3533.3 (1984) (claims for monetary relief automatically avoid mootness); *Tucson Med. Ctr. v. Sullivan,* 947 F.2d 971, 978–79 (D.C.Cir. 1991) (hospitals' claims for interest on reimbursement claims not moot where Secretary settled reimbursement claims after commencement of action). *cf. Skagit,* 80 F.3d at 386 (if challenge had been appropriate under *Bowen,* it would not have been moot).

Thus, the Court finds that plaintiffs' claims are not moot and it has jurisdiction to consider the merits.

The Court must review this case under the APA. Under the APA, an agency's action "shall be set aside if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or contrary to law." *In Home Health, Inc. v. Shalala,* 188 F.3d 1043, 1046 (8th Cir.1999) (citation omitted) (finding that Secretary's interpretation of Guidelines limiting reimbursement for physical therapy services was

contrary to plain meaning of statute). *See* 5 U.S.C. § 706 (scope of review). In reviewing an agency's construction of a statute that it administers, the Court applies a two-prong analysis enunciated in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First the Court must determine if "Congress has directly spoken to the precise question at issue." *Id.* If so, "that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842, 843(*Chevron* Prong I). But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843 (*Chevron* Prong II).

"If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843–44, 104 S.Ct. 2778.

Plaintiffs contend that the intent of Congress in this instance is clear and that the Secretary's Final Rule is contrary to the express mandate of Section 4202(b). *See County of Los Angeles v. Sullivan,* 969 F.2d 735, 740 (9th Cir.1992) (Secretary's interpretation of Medicare statutes will not be upheld if inconsistent with statute and regulations).

"Part of the task of statutory interpretation is to seek to interpret the statute in a way that includes every word and clause." *Hennepin County Med. Ctr. v. Shalala,* 81 F.3d 743, 748 (8th Cir.1996) (review of language and structure of statute along with legislative history indicates statute sufficiently clear to find that no

"gap" to be filled by Secretary's interpretation of statute). However, in looking at the plain language of the statute, the Court is required to examine the text "as a whole by considering its context, object and policy." *Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 899 (8th Cir.1999) (citation and internal quotation marks omitted).

■ Public Law 105–33 (the Balanced Budget Act of 1997) revised Section 4202 as follows:

(a) IN GENERAL.—Section 1886(d)(10)(D) (42 U.S.C. 1395ww(d)(10)(D)) is amended—

(1) by redesignating clause (iii) as clause (iv); and

(2) by inserting after clause (ii) the following new clause: "(iii) Under the guidelines published by the Secretary under clause (i), in the case of a hospital which has ever been classified by the Secretary as a rural referral center under paragraph (5)(C), the Board may not reject the application of the hospital under this paragraph on the basis of any comparison between the average hourly wage of the hospital and the average hourly wage of hospitals in the area in which it is located.".

42 U.S.C. § 1395ww NOTE

(b) CONTINUING TREATMENT OF PREVIOUSLY DESIGNATED CENTERS.—

(1) IN GENERAL.—Any hospital classified as a rural referral center by the Secretary of Health and Human Services under section 1886(d)(5)(C) of the Social Security Act for fiscal year 1991 shall be classified as such a rural referral center for fiscal year 1998 and each subsequent fiscal year.

(2) BUDGET NEUTRALITY.—The provisions of section 1886(d)(8)(D) of the Social Security Act shall apply to reclassifications made pursuant to paragraph (1) in the same manner as such provisions apply to a reclassification under section 1886(d)(10) of such Act.

42 U.S.C § 1395ww NOTE

The plain language of the statute states unambiguously that *any* hospital that had been *classified* as an RRC under 42 U.S.C. § 1395ww(d)(5)(C) for FFY 1991 *shall* be classified as an RRC center FFY 1998 and each subsequent fiscal year. The only requirement is that the hospital have been classified as an RRC for FFY 1991.

The Secretary, however, argues that his interpretation was consistent with the statute. According to the Secretary, the Final Rule was necessary to reconcile the statutory provisions of 42 U.S.C. § 1395ww(d)(5)(C)(i) and Section 4202(b) which had to be read together. 42 U.S.C. § 1395ww(d)(5)(C)(i) provides, in relevant part:

A hospital which is classified as a rural hospital may appeal to the Secretary to be classified as a rural referral center under this clause on the basis of criteria (established by the Secretary) which shall allow the hospital to demonstrate that it should be so reclassified by reason of certain of its operating characteristics being similar to those of a typical urban hospital located in the same census area . . .

The Court is at a loss as to how this statute creates an ambiguity that the Secretary had to reconcile. Section 1395ww(d)(5)(C)(i) provides that a rural hospital may seek classification as an RRC. It does not require that a hospital be rural to be an RRC.

Furthermore, the Secretary's attempt to read into Section 4202(b) an additional requirement that the hospital be rural does not comport with the Secretary's treatment of other RRCs under Section 4202(b). That is, under Section 4202(b), the Secretary reinstated RRC status to all hospitals, both urban and rural, that lost

their status due to triennial review. There is no provision limiting the statute to only rural hospitals or hospitals in rural areas. Nothing in the statute indicates that the term "any" should not be applied broadly to any hospital, rural or urban, that had been classified as an RRC for FFY 1991. *See Harmon,* 191 F.3d at 900 ("any action" applies broadly to all actions authorized by the statute). The statute contains only one condition for having a hospital's RRC status restored, the statute provides no other conditions, and none should be implied. The Secretary's additional requirement, that the hospital is rural, is contrary to the clear statutory mandate. *See Shalala v. St. Paul–Ramsey Med. Ctr,* 50 F.3d 522, 529 (8th Cir.1995) (Secretary's additional requirement of independent verification of indigency for Medicare reimbursement inconsistent with plain language of rule. "The Secretary's interpretation simply has sought to add a requirement to section 312 that does not appear in the plain meaning of the rule. Accordingly, we cannot defer to the Secretary's interpretation, which reads unwritten and additional terms into the rule in question.").

This is not the case where the statute grants the Secretary discretion in determining what hospitals should be included. *See Macon County,* 7 F.3d at 767 (language of statute stating "such as" and "as the Secretary deems appropriate" is broad grant of discretion concerning exemption questions). Lack of discretionary language in the statute is evidence that Congress did not delegate any discretionary authority to permit the Secretary to exclude any FFY 1991 RRCs from the mandate of Section 4202(b). Here, Congress'

use of the word "shall" connotes a mandatory intent. "When used in statutes the word 'shall' is generally regarded as an imperative or mandatory and therefore one which must be given a compulsory meaning." *Stanfield v. Swenson,* 381 F.2d 755, 757 (8th Cir.1967). Thus, Congress instructed the Secretary to grant RRC status exactly as stated in Section 4202(b), to all FFY 1991 RRCs.

Additionally, the legislative history of Section 4202(b) provides support for the plain language of the statute. The Conference Report accompanying Section 4202(b) states that it:

> Prohibits the ... MGCRB from rejecting a hospital's request for reclassification on the basis of any comparison between the average hourly wage of any hospital ever classified as a RRC and the average hourly wage of hospitals in the area in which the RRC is located. *The provision would also permanently grandfather RRC status for any hospital designated since 1991.*

H.R.Conf.Rep. No. 105–217, accompanying the Balanced Budget Act of 1997, 105th Cong. at 708 (1997)( emphasis added). Clearly, the Congressional intent is broad—to include any hospital designated as an RRC in 1991.

Plaintiffs argue that if Congress had wanted to exclude certain hospitals, it could certainly do so, as it did in Section 13501(d). In that Section, enacted as part of the Omnibus Budget Reconciliation Act of 1993, Congress specifically excluded hospitals located in an area redesignated as a M.S.A. by OMB from extension of regional referral status.[8]

8. Section 13501(d) provided:.
 Any hospital that is classified as a regional referral center under section 1886(d)(5)(C) of the Social Security Act as of 1992, shall continue to be so classified for cost reporting periods beginning during fiscal year 1993 or fiscal year 1994, unless the area in which the hospital is located is redesignated as a Metropolitan Statistical Area by the Office of Management and Budget for such a fiscal year.
 Pub.L. No. 103–66, H.R. 2264, 103d Cong. § 13501(d) (1993).

Plaintiffs also argue that the Secretary implicitly recognized that his interpretation of Section 4202(b) was incorrect when he revised his policy in response to the enactment of Section 401. Congress enacted Section 401 to create a mechanism, separate and apart from the MGCRB reclassification process, to allow an urban hospital to apply to the Secretary to be treated as being located in the rural area of the State in which the hospital is located for purposes of Medicare reimbursement. It amends Section 1886(d)(8) (42 U.S.C. § 1395ww(d)(8)) to allow the Secretary to treat an applying hospital as being located in the rural area of the State in which the hospital is located if the hospital is located in an urban area and satisfies any of the follow criteria:

(I) The hospital is located in a rural census tract of a metropolitan statistical area (as determined under the most recent modification of the Goldsmith Modification, originally published in the Federal Register on February 27, 1992 (57 Fed.Reg. 6725)).

(II) The hospital is located in an area designated by any law or regulation of such State as a rural area (or is designated by such State as a rural hospital).

(III) The hospital would qualify as a rural, regional, or national referral center under paragraph (5)(C) or as a sole community hospital under paragraph (5)(D) if the hospital were located in a rural area.

(IV) The hospital meets such other criteria as the Secretary may specify.

While the Court need not find that the Secretary recognized that he erred in his interpretation of Section 4202(b), the Court is of the opinion that the Revised Rule represented the Secretary's acknowledgment of the need to clarify a situation made ambiguous at least in part by the Secretary's interpretation of Section 4202(b). It also represents an acknowledgment by the Secretary that Congress' intent was to grant RRC status to those hospitals that had been so classified previously. *See* 65 Fed.Reg. 47088–89 (2000).

In sum, the Court finds that the Final Rule is invalid as contrary to Section 4202(b).

Because the Court has found that the Final Rule is contrary to the plain language of the statute, the Court need not address the question of whether the Secretary's Final Rule is also invalid under the arbitrary and capricious standard of the APA. *See In Home Health, Inc.*, 188 F.3d at 1047 (finding Secretary's decision not supported by plain meaning of statute and therefore do not need to address reasonableness argument).

Plaintiffs argue that they are entitled to the Medicare reimbursement they should have received pursuant to the RRC status. They have submitted the affidavit of their expert indicating the amounts to which they are entitled.

The Secretary asserts that the appropriate remedy is for the Court to remand the matter to the Secretary to calculate the amounts of additional reimbursement, if any, to which the plaintiffs are entitled. The Court agrees. "[T]he function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the [agency] for reconsideration." *Fed. Power Comm'n v. Idaho Power Comm'n*, 344 U.S. 17, 20, 73 S.Ct. 85, 97 L.Ed. 15 (1952).

Accordingly, plaintiffs' motion for summary judgment is granted as set forth above; the Secretary's motion for summary judgment is denied. The case is remanded to the Secretary for calculation of Medicare reimbursement to which the plaintiffs are entitled for the years they

were unlawfully denied RRC status because of the invalid Final Rule.